STATE OF MINNESOTA ex rel. H. W. CHILDS, Attorney General, v. PIO-
NEER PRESS COMPANY and Another.[1]

October 21, 1896.

Nos. 10,330—(46).

### Creation of New Counties—Election—Distinct Propositions—Constitution.

Where several distinct propositions to create new counties are submitted
at the same election to the electors of the same county, under the provisions
of Laws 1893, c. 143, § 4, as amended by Laws 1895, c. 124, § 2, no elector
can vote for or against more than one of the propositions. If he does, his
ballot cannot be counted for or against any of such propositions. Neither
the original act nor the amendment, when so construed, are unconstitution-
al.; following State v. Board of Commrs. of Crow Wing Co., supra, page
519.

Appeal by plaintiff from an order of the district court for Ramsey
county, Willis, J., dissolving an injunction against defendants, and
sustaining their demurrer to the complaint. Affirmed.

*H. W. Childs,* Attorney General, and *George B. Edgerton,* for ap-
pellant.

*John B. & E. P. Sanborn,* for respondents.

*Wm. Watts* also filed a brief.

START, C. J. The state of Minnesota, by this action, sought to
restrain the several defendants from receiving from the state treas-
urer pay for publishing, pursuant to the provisions of Laws 1893,
c. 143,[2] the proclamations of the governor relating to the formation
of several proposed new counties out of the territory now compris-
ing the county of Polk, on the ground that the law under which the
propositions for the creation of the new counties are to be submitted
is, as amended by Laws 1895, c. 124, unconstitutional. The defend-
ants demurred to the complaint, the demurrer was sustained, and
from the order the state appealed.

The act in question is a general law providing for the creating
and organization of new counties. It provides that whenever a pe-
tition for the creation of a new county is presented to the secretary
of state he shall file the same, and the governor, auditor, and secre-

---

[1] Reported in 68 N. W. 769.        [2] G. S. 1894, §§ 621-637.

tary of state shall meet and consider the petition, and, if it is found to conform to the law, they shall so certify, and thereupon the governor shall issue his proclamation directing the proposition to be submitted to the voters of the county or counties to be affected thereby. It further provides that, if any such proposition receives a majority of the votes cast thereon, it is adopted, and the new county created. It contains no limit to the propositions that may be submitted at the same election to the electors of the same county. The manner of giving notice of the election, and the method of voting thereon, are prescribed by section 4 of the act, which, as amended by Laws 1895, c. 124, reads thus:

"Sec. 4. At the time of giving notice of the next general election to be held after the issuing of the said proclamation by the governor it shall be the duty of the officers of the county or counties affected thereby, who are required to give notice of the election of officers therein, to give notice in like manner, that at said election a vote will be taken on the question of the creation of the proposed new county, or counties, stating and specifying in said notice the boundaries of said proposed new county; the proposed location of the county seat and the name of such proposed county; and the ballots for such general election shall, for each pending proposition of the kind, have printed thereon the words: 'For the creation and organization of the proposed new county of (here insert the name of proposed county), Yes—No'; and each elector voting on such proposition or propositions to create and establish such new county or counties shall make a cross opposite the 'Yes' or 'No' as provided in section thirty-four of chapter four of the General Laws of Eighteen Hundred and Ninety-One. Provided, the electors shall only vote for or against one proposition, and if the elector places a cross mark opposite more than one such proposition, said ballot shall not be counted for any such proposition, but shall be as to such proposition null and void."

The only change made by the amendment was to add the proviso. If the proviso is valid, it is manifest that, where more than one proposition is submitted at the same election to the voters of the same county, and an elector votes for or against more than one of such propositions, his ballot cannot be counted either way on any one of the propositions, for in such a case his ballot would be void for uncertainty. He is prohibited from voting on more than one proposition. If he disregards this prohibition, it is impossible to determine for which one his ballot should be counted. If he votes for more than one proposition, his ballot is just as uncertain and void

as it would be if he voted for two candidates for the same office. In the latter case the law prohibits him from voting for more than one candidate; in the former, from voting on more than one proposition. Where there are several propositions to be submitted at the same time, he must elect on which one he will vote.

In reaching this conclusion we have not overlooked the fact that this proviso in practice may lead to results not expected by the legislature when the law was enacted. For example, if three-fourths of the electors of Polk county should happen to vote on the same proposition, and defeat it, and the other one-fourth should divide on the other propositions, and carry one or more of them, the result would be the creation of one or more new counties by a small fraction of the voters of the county of Polk, leaving, perhaps, the territory included in the defeated proposition still a part of the latter county, but wholly detached from it. If the construction of this proviso was doubtful, it would be proper to consider the results liable to flow from giving effect to the letter of the proviso; but there is no room for construction. The prohibition is plain and absolute.

It is claimed, however, by the state, that the provisions of section 1, art. 11, of the constitution guaranty to each elector of an organized county the right to vote on each and all propositions to change its boundaries; and that hence the proviso, as construed, is unconstitutional.

If the premises of this proposition are correct, not only the conclusion follows, but the entire act of 1893 is unconstitutional, for under the section of the constitution referred to the law or proposition to remove a county seat or change the boundaries of a new county must be adopted by a majority of all of the electors voting at the election, and not by a majority of the votes cast on the proposition as the act in question provides. Bayard v. Klinge, 16 Minn. 221 (249); Everett v. Smith, 22 Minn. 53. But no part of section 1, art. 11, of the constitution, so far as it prohibits the change of county lines without submitting the matter to a vote of the electors of the counties to be affected thereby, is now in force. It has been cut up, root and branch, by the subsequent amendments to the constitution prohibiting special legislation. State v. Board of Commrs. Crow Wing Co., supra, page 519, 68 N. W. 767. There are now no constitutional limitations upon the power of the legislature to pro-

vide for the creation of new counties and changing county lines by general law without submitting either such law or the propositions for such change of boundaries to the electors of the counties affected thereby. It is a mere matter of favor when the legislature does provide for the submission of such propositions to the electors, and, being such, it may submit the question on any terms or conditions it sees fit to prescribe.

Both the act of 1893 and the proviso added in 1895 prohibiting the elector from voting at the same election on more than one proposition are constitutional. Nichols v. Walter, 37 Minn. 264, 33 N. W. 800; Todd v. Rustad, 43 Minn. 500, 46 N. W. 73. The proviso does not violate section 34, art. 4, of the constitution, requiring all general laws to be uniform in their operation throughout the state.

Order affirmed.