STATE OF MINNESOTA ex rel. H. W. CHILDS, Attorney General, v. BOARD OF COMMISSIONERS OF RED LAKE COUNTY and Others.[1]

February 1, 1897.

Nos. 10,473—(303).

**Constitution—Title of Act—Laws 1893, c. 143.**

Laws 1893, c. 143, entitled "An act to provide for the creation and organization of new counties and government of the same," is not unconstitutional for the alleged reason that its subject is not expressed in its title, as required by article 4, § 27, of the constitution.

**Organization of New County—Petition.**

An elector may legally sign two or more noncompeting petitions for the creation and organization of new counties under the provisions of this statute.

**Same—Submission to Electors—Adoption.**

All propositions for the creation of such new counties, whether competing or otherwise, if supported by valid petitions, must be submitted to the electors; but only one of the competing propositions can be adopted at the same election, and to secure this result it must receive a majority of all the votes cast thereon, also a plurality of the votes cast on the propositions with which it is competing.

Information in the nature of quo warranto.  Writ discharged.

*H. W. Childs*, Attorney General, *H. Steenerson*, and *William Watts*, for relator.

Laws 1893, c. 143, is unconstitutional, because the subject is not sufficiently expressed in its title.  The title is "An act to provide for the creation and organization of new counties," etc.  The act not only provides for the creation and organization of new counties, but for changing the lines of counties already organized.  The distinction between established and organized counties is clear and definite, and has been recognized since the foundation of the state.  State v. McFadden, 23 Minn. 40.  Organizing new counties and carving them out of established counties without municipal organization have always been wholly within legislative control without reference to popular vote.  By such act of the legislature every county since the adoption of the constitu-

[1] Reported in 69 N. W. 1083.

tion has come into existence. The title to this act would indicate provisions relative to the organization of new counties out of unorganized or established counties. But its provisions relate exclusively to changing lines of counties already organized, of old counties. See In re Hauck, 70 Mich. 396, 38 N. W. 269; Black, Const. L. 287.

The petition for the organization of Red Lake county is invalid, because it is signed by the same persons who signed other petitions filed· at the same time. An elector can sign only one petition under this law. Any other construction of this statute would lead to absurdities more extreme than those in the case at bar. State v. Van Camp, 36 Neb. 91, 54 N. W. 113. The proposition for the establishment of Red Lake county conflicts with those for the establishment of Mills and Columbia counties. They defeat each other. State v. Armstrong, 30 Neb. 493, 46 N. W. 618. There is nothing in the law giving priority to any petition by reason of its being filed first. The authorities having placed conflicting propositions upon the ballots, these propositions defeated themselves by reason of their embracing the same territory. To adopt any proposition the act in question requires a majority of all voters, or at least a majority of all votes cast. Alexander v. Worthington, 5 Md. 485.; Sutherland, St. Const. 313.

*Davis, Kellogg & Severance* and *Ira B. Mills*, for Garfield county.

Laws 1895, c. 124, § 2, should not be construed so as to allow the submission of conflicting propositions at the same election. A construction allowing the submission of several overlapping propositions would lead to an absurd result. 23 Am. & Eng. Enc. Law, 362; Sutherland, St. Const. § 324; Stickney v. Maidstone, 30 Vt. 742; Perry v. Skinner, 2 M. & W. 471; Perry Co. v. Jefferson Co., 94 Ill. 220; People v. Davenport, 91 N. Y. 585; United States v. Fisher, 2 Cranch, 358; Hantzch v. Massolt, 61 Minn. 361, 63 N. W. 1069.

*John B. & E. P. Sanborn*, for respondents.

The proposition for the creation of Red Lake county was submitted to the voters in the manner required by the act. The proposition was carried by a majority of the voters voting thereon. It has been so declared by the proclamation of the governor. That other propositions were also submitted and voted upon ought not to affect the result so far as Red Lake county is concerned. Every presumption is in

favor of the acts of the governor and executive officers appertaining to this matter. State v. County, 66 Minn. 519, 68 N. W. 767, 69 N. W. 925, and 73 N. W. 631. The decision and the proclamation of the governor are particularly conclusive of the public welfare in a question like this, and the judicial department will not interfere with its conclusion.

START, C. J. This is an information in the nature of quo warranto, whereby the state challenges the corporate existence of the county of Red Lake, which claims to have been created and organized pursuant to Laws 1893, c. 143, as amended by Laws 1895, c. 124.

The facts are admitted, which, so far as here material, are these: On May 8, 1896, there were filed in the office of the secretary of state, pursuant to the act referred to, four petitions for the location and organization of four new counties to be known as "Nelson," "Hill," "Red Lake," and "Garfield," respectively, out of a portion of the territory of the county of Polk as then established and organized. The propositions to create these counties were not inconsistent or competing ones in any respect,—that is, no territory included in any one of such counties was included in any one or more of the others. The total territory proposed to be taken from the county of Polk for these new counties left the original county with an area exceeding the minimum required by the constitution. Each of the petitions was, in substance and form, as required by the statute, and was signed by the required number of electors, except that each of the petitions was largely signed at the same time and by the same electors. Excluding from the petition for Red Lake county the names of all electors who also signed the other petitions, it was not signed by the necessary 25 per cent. of the electors of Polk county; but including such names it had the full legal number of qualified signers.

On July 14, 1896, two other petitions of like form and substance were filed with the secretary of state for the creation of two new counties to be known respectively as "Mills" and "Columbia." Each of the last-named propositions were competing ones with the previous propositions for the creation of the counties of Red Lake and Nelson, and the county of Columbia was also a competing one with that of Garfield; that is, more than one-half the territory of the proposed county of Red Lake, and a portion of that of the proposed

county of Nelson, were included in the proposed county of Mills. A part of the territory of Red Lake county was also included in the proposed county of Columbia, and the last-named county also included a portion of the territory of the proposed county of Garfield.

Such proceedings were had upon all of the petitions, in accordance with the letter of the statute, that the governor of the state issued his proclamations submitting all six of the propositions to the electors of the county of Polk at the next general election. The proclamation as to the first four was issued before the last two petitions were filed. The statute in question contains no express limit to the number of such propositions which may be submitted at the same election, and provides, as amended, that no elector shall vote for or against more than one proposition. State v. Pioneer Press Co., 66 Minn. 536, 68 N. W. 769.

The votes for and against the six propositions respectively were as follows: Proposition to create Nelson county: Yes, 765; no, 1,050. Proposition to create Garfield county: Yes, 603; no, 608. Proposition to create Hill county: Yes, 553; no, 1,574. Proposition to create Red Lake county: Yes, 992; no, 449. Proposition to create Mills county: Yes, 334; no, 56. Proposition to create Columbia county: Yes, 575; no, 107. The votes were duly canvassed by the state canvassing board as here stated. Thereupon the governor duly issued his proclamation declaring the proposition for the creation and organization of the county of Red Lake adopted. Thereafter the individual defendants herein, who were named in the petition as the first county commissioners of the new county of Red Lake, met and duly qualified as the first board of county commissioners thereof, and are now acting as such. The governor has not issued any proclamation as to either of the proposed counties of Mills or Columbia.

1. The state claims that Laws 1893, c. 143, the title whereof is "An act to provide for the creation and organization of new counties and government of the same," is unconstitutional, for the reason that its subject-matter is not expressed in its title, as required by article 4, § 27, of the state constitution. This constitutional provision has been repeatedly construed by this court, and it is settled that:

"The insertion in a law of matters which may not be verbally indicated by the title, if suggested by it, or connected with, or proper

to the more full accomplishment of, the object so indicated, is held to be in accordance with its spirit; but a more liberal construction cannot be given without letting in the evils which the provision was intended to exclude." State v. Kinsella, 14 Minn. 395, 397 (524).

We are of the opinion that the subject-matter of the act in question is sufficiently expressed in its title.

It is true, as claimed, that the act provides for the change of the boundaries of organized counties, the temporary location of the county seat of the new counties, the organization of towns and school districts therein, and the division of the indebtedness of the old counties from which new counties are created between the old and the new. But these matters are all directly or indirectly connected with or suggested by the subject-matter expressed in the title of the act, and proper to the more full accomplishment of the object indicated by the title. The act is general, and provides for the creation of new counties out of a portion of the territory of any organized counties in the state. No new counties can be so created without changing the boundaries of the existing counties of the state, hence the declared purpose of the act expressed in its title to provide for the creation of new counties necessarily suggests and implies that the boundaries of the old counties are to be changed thereby. The other provisions of the act are either directly connected with, or are incidental to, the organization and government of such new counties. City of Winona v. School Dist., 40 Minn. 13, 41 N. W. 539; State v. Honerud, 66 Minn. 32, 68 N. W. 323.

2. The next claim of the state is that the petition for the creation of Red Lake county is invalid, because many of the petitioners also signed at the same time the petitions for the other three counties. This claim rests upon the proposition that an elector can legally sign only one petition for the creation of new counties pursuant to this statute. The question whether an elector can legally sign two or more competing petitions for the creation of new counties from the territory of the county of which he is then an elector is not involved in this case, and we do not decide it. But we do hold that such elector may legally sign at the same time two or more noncompeting petitions for the creation of new counties; that is, petitions for several new counties to be created out of separate and distinct portions of the territory of the old county, or, in other words, where no

two of the proposed counties are to contain any portion of the same territory. A competing proposition or propositions, as the term is used herein, is the reverse of a noncompeting one, as we have defined it.

The statute contains no limitation as to the number of petitions an elector may sign, but the state claims that the limitation is implied, because the elector can vote for or against but one proposition at the same election; hence he cannot sign any more petitions to have propositions submitted to the electors than he is authorized to vote for. This seems plausible, but it ignores the fact that by the letter and manifest intention of the original act just as many noncompeting propositions for the creation of new counties as there were proper petitions for could be submitted at the same election, and that each elector was authorized to vote on each and every proposition.

It is obvious that, if there had been no amendment of the statute limiting this right of the elector to vote on all of the propositions, there could be no question of his right, in view of the provisions of the statute, to sign just as many petitions for the creation of new counties as he had a right to vote for or against. But the amendment of the original act by that of 1895 made no change whatever as to the form or substance of the petitions, or the qualification of the signers thereof. The amendment, without limiting the number of propositions that might be submitted at the same election, limited the right of the elector to a vote on one proposition, leaving intact his right to sign as many noncompeting petitions as he saw fit.

It is further claimed that the provisions of the general election law for placing the names of candidates upon the official ballots by petition is applicable to a petition to have a proposition for the creation of a new county submitted to the electors under this act. The provisions of the election law referred to provide that, where the office is to be filled by one person only, an elector can sign only one nominating petition, for the simple reason that, if he signs two or more such petitions, they are competing ones. He is attempting to nominate several men for an office to which, by no possibility, can more than one of them be elected. It is apparent that the prohibition of the general election law relied on does not extend to the petitions here in question, which were noncompeting, and asked for the

submission of independent propositions, all of which could be legally voted upon and adopted at the same election. The petition for Red Lake county was legal.

3. The state also claims that the proposition for the creation of the county of Red Lake conflicted with those for Mills and Columbia, and that they defeat each other; that the placing of these conflicting propositions on the same·ballot when the elector was forbidden to vote on more than one of them was misleading, and that, in any event, a proposition for a new county must receive, in order to carry, "a majority of all the votes cast upon the whole question of county division." After the submission of the propositions for the creation of the counties of Mills and Columbia, they, as well as the first four propositions, became conflicting or competing ones, and three, at least, of these competing propositions, were in form declared carried. This result is unique. Three new counties created and to be organized out of a portion of the same territory; the same territory and its inhabitants within and subject, at the same time, to the jurisdiction of three counties. Such will be the result if the statute is to be construed and given effect according to its strict letter. No such absurd result was intended by this statute.

The actual result of the voting on these six propositions and the points urged by the state in this connection suggest two questions: (a) Does the statute authorize the submission of conflicting or competing propositions? (b) If so, can any one of them be adopted by a majority of the votes cast thereon, unless it also receives more votes than any of its competitors? The strict letter of the statute would require an affirmative answer to each of the questions. But the statute must receive a sensible construction, and one which will avoid results which are both absurd and a menace to the peace and order of the state. General terms of a statute must be so limited in their application, and such exceptions to its general language be implied as to avoid absurd and unjust consequences. It is manifest that the statute cannot be construed so as to answer both questions in the affirmative, for the legislature never intended the consequences which would follow a literal adherence to the statute. One of these questions must be answered in the negative.

Mr. Justice BUCK and I are of the opinion that the statute does not authorize the submission of conflicting or competing petitions;

that petitions which are first filed and found to conform to the requirements of the law should be submitted, and that petitions subsequently filed, which compete with those already filed, should be refused; that such conflicting petitions are excepted by implication from the general language of the statute directing the submission of all propositions for the creation of new counties which are supported by legal petitions. See State v. Armstrong, 30 Neb. 493, 46 N. W. 618.

A majority of the members of the court, however, are of the opinion that this construction of the statute is not justified by the specific directions of the statute requiring the submission of all propositions where the petitions therefor are found to conform to law, and that the statute must be construed as requiring the submission of all legal petitions whether conflicting or otherwise.

Accepting this construction of the statute, it follows that the second question must be answered in the negative, for, if several competing propositions are submitted and voted upon at the same election, and if each of two or more of them receive a majority of the votes cast thereon without receiving a plurality of the votes cast on the several competing propositions all of them are defeated. It is no more possible for all or any two of three proposed new counties competing with each other at the same election for the same territory to be declared, as a result of the election, entitled to the same territory, than it is for all or any two of three competing candidates for an office which is to be filled by one person only, to be declared elected. While the statute states in general language that any proposition for the creation of a new county shall be declared adopted if it receives a majority of the votes cast thereon; yet it is absolutely certain that the legislature never intended that a competing proposition should be carried unless it also secured a plurality vote over all of its competitors. An intention to provide for the creation of three counties in part out of the same territory cannot be imputed to the legislature. From the whole purview of the statute, and a consideration of the manifest intention of the legislature in framing it, and the absurd and harmful consequences of following its strict letter, our construction of this statute is that competing propositions for new counties may be submitted at the same election, but only one can be adopted; and to secure such result it must receive not

only a majority of the votes cast thereon, but also a plurality of the votes cast on the competing propositions; that is, it must receive a larger affirmative vote than any of its competitors or rival candidates for countyhood.

The proposition to create the county of Red Lake received both a majority of the votes cast on that proposition and a plurality over its competitors, and it follows, from our construction of the statute, that it was adopted, and that the competing propositions for the creation of the counties of Mills and Columbia were both defeated. It also follows that there were no unauthorized propositions printed on the ballots; and that the latter were not misleading; and, lastly, that the county of Red Lake was legally created and organized.

Writ discharged.