STATE ex rel. WALLACE B. DOUGLAS v. ENGEBRET LARSON
and Others.[1]

April 16, 1903.

Nos. 13,393—(1).

### New County—Submitting Question to Voters.

Under the provisions of Laws 1893, p. 262 (c. 143), "An act to provide for the creation and organization of new counties and government of the same," but one proposition involving the same territory can be submitted at the same election. In all cases, to warrant the submission at the same time of more than one proposition to create new counties, there must be a material and substantial difference in the territory to be included within their respective boundaries.

### Priority of Petitions.

The first petition presented to the Secretary of State must be given priority by the state officials.

Writ in the nature of quo warranto issued from the supreme court upon relation of the attorney general, requiring ·respondents, claiming to be the board of county commissioners of Columbia county, to show by what right they exercised their respective offices. An answer being interposed by respondents, relator demurred thereto. Demurrer sustained, and judgment of ouster ordered.

*De Forest Bucklen, Martin O'Brien, J. H. Hendricks* and *Childs, Edgerton & Wickwire,* for relator.

*H. W. Stark, G. S. Ives* and *A. A. Miller,* for respondent.

COLLINS, J.

Action brought by the state, upon the relation of the Attorney General, against five persons, who claim to be the board of county commissioners of an alleged "Columbia" county, to ascertain and determine the validity of a pretended organization of said county.

The facts seem to be undisputed. December 13, 1900, under the provisions of Laws 1893, p. 262 (c. 143), "An act to provide for the creation and organization of new counties and government of

1 Reported in 94 N. W. 226.

the same," a petition was presented and filed with the Secretary of State for the creation and organization of a new county out of territory then embraced within the limits of the county of Polk. This petition was in due form. Its proposed name was Nelson, and Fosston was named as the county seat. Five legal voters were also named, to constitute the first board of county commissioners. The next day another petition, describing the same territory precisely, was presented and filed with the Secretary of State. In this petition it was proposed to call the new county Columbia, with McIntosh as the county seat, and five other and different legal voters were named as the persons to constitute the first board of county commissioners. July 22, 1902, a third petition was presented and filed with the Secretary of State, in which identically the same territory was described, to be organized as Star county, and Erskine was named as the proposed county seat. Five other legal voters were named to constitute the first board of county commissioners.

These three petitions were considered by the commission mentioned in section 2 of said chapter 143, and in due season the Governor issued in each case a proclamation declaring that a petition had been filed and found to be conformable to law, and directing that the question of the creation of the new county proposed in each petition be submitted to the voters of the county of Polk at the next succeeding general election, which occurred in November, 1902. The Polk county officials duly gave notice in accordance with the provisions of section 4, by submitting three distinct propositions—one for the creation and organization of the county of Nelson, one for the county of Columbia, and one for the county of Star. At this election the proposition to create Nelson county received 1,381 votes in its favor and 112 against, a total vote of 1,493, with a majority in favor of the proposition of 1,269. On the Columbia county proposition there were 1,513 in favor, 813 against, the total vote being 2,326, with a majority in favor of 700. On the Star county proposition there were 132 votes in its favor and 18 votes against it, a total of 150 votes, with a majority in favor of 114. The result of the vote being canvassed and announced by the state board of canvassers (section 8), the Governor, following the

rule announced in State v. Board of Commrs. Red Lake Co., 67 Minn. 352, 69 N. W. 1083, issued his proclamation declaring the proposition for the creation and organization of Columbia county carried.

These respondents are the persons named in the Columbia county petition as its first board of county commissioners. They organized, and at the time of the commencement of these proceedings claimed to be and were acting as the board of commissioners of Columbia county. The object of this action, as has been stated, is to test the legal existence of the county.

Chapter 143, with the amendatory act of 1895 (Laws 1895, p. 270 [c. 124]), is a very difficult statute to construe. It is badly constructed, and far from complete in many respects. It has been before this court more than once, but there are no decisions which govern the questions now presented, although counsel for the respondents somewhat rely on State v. Board of Commrs. Red Lake Co., supra.

It may be well to state now the facts of that case. On May 8, 1896, there were filed in the office of the Secretary of State, pursuant to the act referred to, four petitions for the location and organization of four new counties, to be known as "Nelson," "Hill," "Red Lake," and "Garfield," respectively, out of a portion of the territory of the county of Polk as then established and organized. The propositions to create these counties were not inconsistent or competing ones in any respect; that is, no territory included in any one of such counties was included in any one or more of the others. The total territory proposed to be taken from the county of Polk for these new counties left the original county with an area exceeding the minimum required by the Constitution. Each of the petitions was, in substance and form, as required by the statute, and was signed by the required number of electors, except that each of the petitions was largely signed at the same time and by the same electors. Excluding from the petition for Red Lake county the names of all electors who also signed the other petitions, it was not signed by the necessary twenty-five per cent. of the electors of Polk county; but including such names it had the full legal number of qualified signers. On July 14, 1896,

two other petitions of like form and substance were filed with the Secretary of State for the creation of two new counties, to be known, respectively, as "Mills" and "Columbia." Each of the last-named propositions were competing ones with the previous propositions for the creation of the counties of Red Lake and Nelson, and the county of Columbia was also a competing one with that of Garfield; that is, more than one-half the territory of the proposed county of Red Lake, and a portion of that of the proposed county of Nelson, were included in the proposed county of Mills. A part of the territory of Red Lake county was also included in the proposed county of Columbia, and the last-named county also included a portion of the territory of the proposed county of Garfield. Upon the returns made by the state canvassing board as to the vote at the election, the Governor issued his proclamation declaring the proposition for the creation and organization of the county of Red Lake adopted. The Governor made no other proclamation, and thereupon that action was brought against the board of commissioners of Red Lake county to test its corporate existence.

It was held, among other things, that any elector of Polk county might legally sign two or more noncompeting petitions for the creation and organization of new counties out of that legal subdivision. It was further held that all propositions for the creation of such new counties, whether competing or otherwise, must be submitted to the electors if supported by valid petitions, but that only one of the competing propositions can be adopted at the same election, and that, to secure this result, such proposition must receive a majority of all the votes cast thereon, and also a plurality of the votes cast on the propositions with which it is competing. But the CHIEF JUSTICE, who wrote the opinion in the case, and Justice BUCK, were of the opinion that the statute does not authorize the submission of conflicting or competing petitions; and that those first filed in conformity with the law should be submitted, while those subsequently filed, which compete with those already filed, should be rejected, because excepted by implication from the general language of the statute directing the submission of all propositions if supported by petitions legal in form—citing State v. Armstrong, 30 Neb. 493, 46 N. W. 618.

The views of the majority on this point were expressed in the following language (page 359):

"A majority of the members of the court, however, are of the opinion that this construction of the statute is not justified by the specific directions of the statute requiring the submission of all propositions where the petitions therefor are found to conform to law, and that the statute must be construed as requiring the submission of all legal petitions whether conflicting or otherwise."

Attention is here called to a fact which will probably explain why the words "or otherwise," found in the foregoing excerpt, were used. It will be seen that the four petitions filed on May 8, 1896, were not competing or conflicting in any respect. Each petition was for the creation of a new county, but there was no territory proposed to be included in either which had been included in any of the petitions for the other proposed new counties. They were wholly independent propositions. The two petitions filed on July 14 were competing and conflicting as to territory— one of them with the proposition to create the county of Red Lake, and also with that for the creation of the county of Nelson; while the other competed and conflicted with the earlier petition to create the county of Garfield. It was with reference to this fact that the words "or otherwise" were used in the opinion. This expression was perfectly proper when considering the facts there in mind, but it will be noticed that it was wholly obiter, because unnecessary. That case would have been fully covered had the doctrine been announced that the statute must be construed so as to require the submission of all conflicting petitions if in legal form. As the words "or otherwise" were then used with reference to the exact facts, and none other, they cannot control the present case.

Recurring to the facts now before us, it will be seen that there were three petitions, which in no manner conflicted or competed, for the creation of certain specified territory into a new county. All agreed as to the territorial limits. The only conflict or competition was as to the name to be adopted for such county, the place for the county seat, and the names of the gentlemen who should

compose the first board of county commissioners. As to these they were conflicting and in competition.

The main feature of the statute now under consideration is to provide for the creation and establishment of new counties. It would have been a perfect act if it had provided for nothing more than the submission of the question of a division of a county to the legal voters thereof. Had a proposition based upon such petition, authorized and in accordance with a legislative act, received a majority of the votes cast, a new county would have been created and established. It would have been unorganized, and subject to the present general laws, in relation to its organization, except as to its county seat, for the designation of which no independent law has been enacted. It is very clear from the whole tenor of the act that its purpose and main object was to create and establish new counties, and that the provisions in respect to the names to be given thereto, the places at which the county seats are to be located, and concerning the selection of the first board of county commissioners were all merely secondary, subsidiary, and incidental. They were necessary to the organization of the proposed new county, but not at all important for its creation and establishment. If, then, the main object of the act is to create and establish new counties, it must be construed, if possible, in the absence of any language which controls, or even indicates in the slightest degree, the intent of the legislators, so as to be consistent and harmonious, and not lead to absurdity and utter confusion. It must be given a practical construction; one that will facilitate in proper cases the creation and establishment of new counties, and at the same time avoid a condition of things which would inevitably lead to disastrous and destructive results. It is with a view to laying down a rule which will, as far as possible, avoid absurdity that we have examined this case and must dispose of it.

Now, it is impossible for a moment to believe that the legislature intended by this act to permit and authorize an unlimited number of petitions to be filed for the creation of one county; that is, several petitions describing the same territory. If such an intent is conceded, it inevitably follows that an unlimited number

of petitions can be filed, identically the same as to name, as to county seat, and as to the persons to compose the first board of county commissioners, except as to one. More than this: If it is once conceded that more than one petition may be filed asking for the creation of the same territory into a new county, we cannot stop short of the concession that the petitions may be alike in every respect, or short of the admission that the commission provided for in section 2 must act separately, and independently upon each proposition; that the Governor must issue a proclamation on each, and that each must be submitted to the voters of the territory to be affected by a change of county limits.

Surely, it was not the intention of the lawmakers to provide or permit such an absurdity, or to make it possible that such a condition could ever exist. With three petitions, each describing the same territory, there could be but one main proposition to be submitted, namely, the creation of one new county, and but one. The petition first filed complied in form with the statute, and demanded that the question of the creation of certain described territory into a new county be submitted to the electors of Polk county. The subsequently filed petitions were mere repetitions as to this essential question, and invalid.

To hold that two or more petitions may be filed embracing precisely the same territory deprives every elector of the full and unqualified right to vote for or against the proposition to create a new county. His only unqualified right to vote is confined to a proposition relating wholly and entirely to the organization of the proposed county. The friends as well as the enemies of the main proposition must divide their votes among two or more propositions, and are thus deprived of fairly expressing their views. An elector may be in favor of or against the creation of a new county, but he has no unqualified opportunity to vote for or against the main proposition because of the peculiar manner in which it is submitted. One is but a repetition of the other upon the essential question involved, and certainly every voter should have the right to express himself fully and fairly upon this question. But his right so to do is diminished or curtailed as the number of like

propositions to be voted upon increases. The elector who is opposed to all propositions and objects to a division of his county is placed at a disadvantage, and deprived of his full right, when he can vote against but one out of two or more propositions. The fact is that, if more than one is submitted covering the same territory, the electors opposed to a division are in part disfranchised as to the main and essential question, and can simply vote without limitation and restriction upon the incidental and nonessential questions as to the name of the proposed new county, where the county seat is to be located, and who shall serve as the first board of county commissioners. And to a lesser degree this is true as to the electors who favor division.

The difficulty of a full and fair expression of opinion is illustrated by the vote cast at the election. On the proposition to create a new county 3,969 votes were cast, of which 3,026 were in favor and 943 against. This includes, of course, the vote upon the three propositions. As to Columbia county, a little more than fifty-three per cent. of the votes cast on that proposition were in favor of it, so that almost half of the electors who voted were against it. On each of the other two propositions the percentage of vote in favor was more than ninety-four per cent. of the whole vote cast. It will be seen that the strong sentiment of those who actually voted, when confined to the proposition each elector voted upon, was in favor of the creation of Star county, while Nelson was a close second. But under the rule for determining the result, adopted in the Red Lake County case, which we do not question, the Columbia county proposition was declared successful. Now, what effect the differences as to the incidental features of these propositions made with the electors it is impossible to determine. That they were confused and misled and deprived of a fair expression of opinion is self-evident, and absolutely certain. No proof of the fact was required.

We have said that the creation of new counties is the paramount object of the act. All through the law it is made very apparent that this is its main object, and, had this object alone been provided for, as probably it should have been, and the selection of the name of the county, the place for the county seat, and the

legal voters to constitute the first board of county commissioners, all of which ought really to be determined by the electors of the new county, and concerning which the electors outside of the proposed new county have no concern, and ought not to be allowed to control, much of the obscurity and difficulties which will continually arise in its construction would have been removed.

As it is incumbent upon us to construe the statute, if possible, so that there shall be a full and fair expression of the will of the electors upon the merits of any proposition to create a new county, we are compelled to hold that but one proposition involving the same territory can be submitted at the same election, and that in all cases, to warrant the submission at the same time of more than one proposition to create new counties, there must be a material and substantial difference in the territory to be included within their respective boundaries. It inevitably follows, although such a conclusion may be unfortunate, and lead to difficulties, that the first petition presented must be given priority by the state officials. If this conclusion will lead to a race for precedence and the "right of way," it is within the power of the legislature to provide a plan which will obviate and prevent any undue haste and unfairness in this respect. It must also follow, inevitably, that the election in question, in so far as these new county propositions are concerned, was abortive, and without result.

The demurrer to the respondents' answer is sustained, and judgment will be entered in this court declaring the pretended organization of Columbia county invalid, and of no effect, and ousting the respondents from the offices which they claim to hold.