STATE *ex. rel.* CHAS. W. PLAIN *vs.* FRED FALLEY.

**Legislative Nominees—Secretary of State—Duties.**

> Under the provisions of the statutes of this state, the duties of the secretary of state, in certifying the names of the legislative nominees to the auditors of the proper county, are ministerial, and not judicial.

**Refusal to Certify Nominations—Mandamus.**

> Where such secretary has refused to so certify nominations that were certified to him in regular and proper form, and proceedings are commenced to compel him to certify the names of such nominees, it is no defense on his part to set up facts showing that such nominations were not in fact made in the manner required by the statute.

Application for a writ of mandamus by the State of North Dakota on the relation of Charles W. Plain and others, against Fred Falley, secretary of state, to certify relators' nomination. On the return of the alternative writ, the defendant's motion to quash and set the same aside was denied, and a peremptory writ issued.

*Templeton & Rex,* for relators.

*J. F. Philbrick,* Assistant Attorney General, for defendant.

BARTHOLOMEW, C. J. The relators in this case, Charles W. Plain, James Dobie, and J. H. Williamson, ask, at the hands of this Court, a writ of mandamus requiring Fred Falley, secretary of state, to certify their names to the auditor of Cavalier County as nominees of the "Independent and Democrat party" for the offices, respectively, of state senator and representatives for said Cavalier County, the same being the Eighteenth Legislative District of the state. It will be necessary to refer at some length to certain statutory provisions, and also to epitomize the allegations in the alternative writ. Section 498, Rev. Codes, reads as follows: "Any assembly or convention of delegates held for the purpose of making nominations to public office, or electors to the number hereinafter specified, may nominate candidates for public office to be filled by election within the state. Public printed or posted notice of holding such assembly or convention must be given at least six days before the holding of the same. Such nomination shall be made by delivering to and leaving with the officer charged with directing the printing of the ballots upon which the name is to be placed, within the time *prescribed* herein, a certificate of nomination for each candidate. An assembly or convention within the meaning of this chapter is an organized assembly of delegates representing a political party or principle which cast five per cent. of the total number of votes cast for member of congress at the last general election." The following section declares: "All nominations made by such convention shall be certified as follows: The certificate of nomination, which shall be in writing, shall contain the name of each person nominated, his post-

office address and the office for which he is named and shall designate in not more than five words the party or principle which such convention represents, and it shall be signed and verified by the presiding officer and secretary of such convention, who shall add to their signatures their postoffice address." Section 500 requires the certificates of nomination for state and legislative offices to be filed with the secretary of state, and section 503 provides that such certificate shall be open to public inspection. Section 504 reads: "Not less than twenty-five nor more than thirty days before an election to fill any state or district office the secretary of state shall certify to each county auditor within which any of the electors may by law vote for candidates for such office the name and postoffice address of each person nominated for such office as specified in the certificate of nomination filed with him."

The alternative writ, after reciting at length the facts showing relators to be eligible to the respective offices for which they have been nominated, proceeds to state that heretofore there has been in the state of North Dakota a certain political party known as the "Independent Party," and another political party known as the "Democratic Party;" that the principles of said parties were in many substantial particulars identical, and that it had been the policy of said parties in this state to center their nominations for specific offices, state, legislature, and county, upon the same individuals; that pursuant to said policy, and pursuant to notice duly given by the proper officers of said parties, respectively, said parties duly met in joint convention in the City of Fargo, on July 27, 1898, and placed in nomination a complete state ticket to be voted for at the ensuing general election; that the nominations thus made had been filed with the secretary of state, and by him certified to the various counties of the state. Further, that on September 30, 1898, and pursuant to notices properly given in each instance, the said Democratic and Independent parties of said Cavalier County met in separate delegate conventions at the City of Langdon; that conference committees were appointed, which resulted in a union of the two conventions, and the nomination of a single legislative ticket, under the party designation of "Independent and Democrat Party," and that these relators were the legislative nominees so chosen, and certificates of their nomination, in due and proper form, were filed with the defendant, and that he has failed and refused to certify such nominations to the auditor of Cavalier County. Upon the return of the alternative writ, the defendant moved to quash and set aside the same, on the ground that the allegations did not warrant the relief demanded. By agreement, the defendant also answered, without waiving his motion. The answer admitted, in effect, all the allegations of the alternative writ, except the fusion of the Independent party and the Democratic party in Cavalier County. As to that, it alleged that when the conventions met, in the City of Langdon, the Independent convention was composed of 44 members present in person or by proxy; that the conference committee appointed by said

Independent convention reported against fusion with the Democrats, which said report was duly adopted; that thereupon a fragment of said convention, representing 18 votes in person and by proxy, withdrew, and formed a separate convention, and this fragment subsequently united with the Democrats in nominating the relators. These allegations are admitted by relators.

The contentions of the parties may be thus stated: Defendant contends that as the allegations show that the "Independent and Democrat Party" had no existence at the time of the last general election, it could not have cast five per cent. of the vote cast at that election for member of congress; and as relators come here as the nominees of that party, and not as representing any distinctive principle, they are not entitled, under the clear language of section 498, above quoted, to a place on the official ballot. Again, the delegates of the respective parties that assembled at Langdon on September 30th were chosen as delegates to a county convention of the Independent party or as delegates to a county convention of the Democrat party, and they possessed no inherent power to trasmute themselves into delegates to a convention of the "Independent and Democrat Party," and in so doing they did not reflect their constituency or possess the character of delegates. Further, when the two old parties, under the call of their state organizations, met in Fargo on July 27th, and voluntarily abandoned their old party names, abandoned their separate organizations, and welded themselves into a new party, as the "Independent and Democrat Party," thenceforth the old parties ceased to exist in this state as political entities or parties, and they were without power to call or hold delegate conventions. Lastly, and on the answer,—and conceding for the argument that the foregoing points are not well taken,—he contends that there never was an organization of the Independent and Democrat party in Cavalier County by the union or fusion of the old parties, for the reason that but a minority fragment of the Independent convention united with the Democrats.

Relators contend that none of these questions are before us; that the duties of the secretary of state, in certifying nominations to county auditors, are ministerial purely; and that, if the certificates filed with him are fair on their face, he is without authority to look beyond or outside of the certificates. In this we think relators are clearly right, and a few observations touching the statutes and their construction will disclose our reasons for thus holding. We remark, first, that, if the secretary be clothed with judicial functions to pass upon the legality of all nominations the certificates of which are filed with him, his determinations would be final, as certainly no provisions for appeal or review can be found in the statute, and the decisions of a special tribunal charged with the duty of deciding a special matter are always final, unless the right of appeal be expressly given. 2 Enc. Pl. & Prac. 22. Further, if the secretary be clothed with judicial functions in this matter, then the political policy of the state may often turn upon his decision. The power

is great, and its exercise by an officer universally recognized as political in character would be dangerous, however able and however honest the incumbent might be. For these reasons we should expect to find the power, if conferred at all, conferred in no uncertain terms. And yet confessedly there is no express judicial authority conferred upon the secretary by the statute. At most, it is an implied authority, and, if implied, the means and instrumentalities for its proper exercise are entirely wanting. He can conduct no formal judicial inquiry. He cannot coerce the production of persons or papers. He cannot enforce testimony under the sanction of an oath. His most earnest effort would with equal facility elucidate or suppress the truth. To imply authority under such conditions, the implication must be practically impossible of evasion. But so far is our statute from giving such implied authority that, in our view, it expressly withholds such authority. We call attention to the fact that the certificates of nomination must be filed with the secretary of state, and must contain the name and postoffice address of the person nominated, and must name the office for which he is nominated, and designate the political party or principle represented by the nominating convention. It contains no further information, and all that is given is necessary to the proper preparation of the official ballot. Section 504 declares that, within a time therein specified, "the secretary of state shall certify to each county auditor * * * the name and post office address of each person nominated for such office as specified in the certificate of nomination filed with him." This language is clear, explicit, and final, so far as any authority upon the part of the secretary is concerned. Prima facie, it is his duty to certify to the proper auditors all the nominations properly certified and filed with him.

But we do not agree with counsel for the relators that no power rests anywhere to prevent the certification to the county auditors of nominations not made in some one of the ways pointed out by statute. If no such power exist, then it was utterly useless to provide in what manner nominations should be made, for, however made, they must be certified down. Nor can we agree with counsel that proceedings under section 510, Rev. Codes, can cure these matters. That, we are induced to think, relates solely to errors or omissions on the part of county auditors in printing the official ballots. Certainly, if it can relate to errors further back, it is not exclusive. The certificates filed with the secretary must be kept open to public inspection. There is a purpose in that provision. The secretary is a disinterested party. He has no duty to perform touching such nominations, except to certify them to the proper auditor. That duty every citizen is bound to presume he will perform. But, if improper nominations have been filed, any citizen interested may apply to a Court of competent jurisdiction, where all the facts can be speedily and certainly investigated, and, if nominations other than as prescribed by statute have been filed with the secretary, that officer may be enjoined from certifying the same to the county

auditors. But, if no such restraining order be served, it is the duty of the secretary to certify all nominations proper certificates of which have been filed in his office. The law does not allow him to concern himself whether such nominations were or were not properly made, and when he, of his own volition, refuses to certify such nominations, and parties in interest bring proceedings to enforce the parformance of such duty, it is no answer upon his part to say that facts exist which would have enabled the proper party, at the proper time and in the proper manner, to procure an order restraining him from certifying such nominations. No such order having been in fact obtained, the existence of the facts did not release his duty.

It is proper to state that the learned attorneys for relators disclaim even a suggestion of partisan or improper motives on the part of the secretary. He simply found himself in a position where he might well be in doubt as to the proper course to pursue. The peremptory writ will issue as prayed. It is so ordered.

YOUNG, J., concurs.

WALLIN, J., concurs in result, but as to the power of a Court in any case to enjoin the secretary of state from certifying to county auditors the names of nominees whose nominations have been properly certified to such secretary he expresses no opinion.