**Political Convention—Decides Political Questions.**

    After a contest on the merits after notice, and a full and fair hearing before the state central committee, a decision of such committee that certain delegates from a county convention be seated in the convention, and that the opposing delegates be not seated, followed by the adoption by the state convention of the decision and report of such committee, the courts will not interfere with such action of the convention, but such action of the convention will be deemed conclusive, even as against those persons nominated in a rival county convention for county officers.

**Function of State Convention.**

    Persons affiliating with a political party thereby recognize party organization, and persons accepting nominations from political conventions, in case of nominations by rival conventions, do so at the peril of action by the state convention declaring the convention nominating them irregular as a party organization.

**Judicial Notice of Powers of State Convention.**

    The powers of state conventions as the highest party organization are so well known that courts will take judicial recognition thereof.

**County Conventions.**

    A county convention of a political party cannot be the regular party organization for one purpose, and irregular for another purpose within its scope to act upon.

**No Right of Appeal from Convention to Court.**

>   The provisions of the Australian ballot law of this state are *held* not to give a nominee of a county convention not recognized as regular by the state convention, on a contest before it involving that question, the right to appeal to the courts for relief, although such county officer was not a party to such contest before the state convention.

Application by the state, on the relation of C. W. Buttz, for writ of mandamus to A. A. Liudahl, county auditor of Benson county, N. D. Writ denied.

*O. D. Comstock, Alfred Dresser, G. T. Christianson,* and *C. W. Buttz (Morrill & Engerud,* of counsel), for plaintiff.

*W. H. Thomas, C. L. Lindstrom,* and *Cochrane & Corliss,* for defendant.

MORGAN, J. An alternative writ of mandamus was issued in this court, on application of the relator, commanding the defendant, the auditor of Benson county, to cause the relator's name to be printed on the official ballot of the Republican party for said county as the nominee of said party for the office of state's attorney of said county, at a convention of said party duly and regularly called and held, and also to cause to be printed on said official ballot the other nominees of said convention for the county offices of said county, or to show cause why the commands of said writ should not be obeyed. The affidavit on which such alternative writ of mandamus was based and issued states the following facts, which will sufficiently show the grounds on which it is claimed that a peremptory writ should issue, viz.: That a Republican convention was duly called by the regular central committee of said party in said county for the purpose, among others, of nominating the candidates of the Republican party of said county for all the county offices of said county to be voted for at the next general election in said county; that said county convention was duly held at the time and place stated in said call, and pursuant to said call, and was duly organized at such place by the election of a chairman and secretary; that said convention duly nominated candidates for all county offices, and among them the relator for the office of state's attorney of said county; that the chairman and secretary of said convention duly executed a certificate of the nomination of all such persons for such offices, as required by law, and filed the same in the office of said county auditor on August 2, 1902; that on the 19th day of July, 1902, there was filed in the office of the auditor of said county a certificate, in regular form, of the nomination of other persons claiming to have been duly nominated for county offices of said county by said convention; and as to such other certificate of nominations the relator states that it is false and spurious, and is not what it purports on its face to be; and in reference to such other nominees the affidavit states such other nominees were not nominated by any regular

convention of the Republicans of said county, but were nominated by 35 delegates of the regular convention of said county at which relator was nominated, which said 35 delegates withdrew from said regular convention after they had participated in the organization of said convention, and withdrew on account of a decision of said convention upon the claims of 7 delegates to seats in said convention, which said decision was adverse to such 7 delegates; that said 35 delegates withdrew, and, after joining with such 7 rejected delegates, organized a convention, and nominated the persons named in the certificate filed on July 19th; that said pretended convention was not a convention of a majority of the delegates entitled to seats in the regular convention of said county, and was not in any respect the regular convention of the Republicans of said county. The alternative writ of mandamus recites the same facts stated in the affidavit, which have been substantially recited herein. The answer of the defendant alleges that the convention at which the relator's ticket was nominated was not composed of a majority of the delegates entitled to seats in the regular Republican convention of said county, but was composed of a minority only of said delegates; that the chairman of the county central committee called the delegates to order; that one Hall and one Palmer were, respectively, nominated as temporary chairman of said convention; that said chairman of said county central committee fraudulently and arbitrarily declared said Hall elected temporary chairman after a viva voce vote had been taken, when in fact he had not received a majority of the votes of said delegates, but said Palmer had received a majority of such votes; that there was a contest from the Ft. Totten precinct, and that the county central committee duly decided that the contesting delegation was entitled to seats in said convention; that a motion was made and carried before said convention, after the temporary organization, that said contesting delegation be allowed seats in said convention; that thereafter a motion was·made by a person not a delegate that the other set of delegates be seated in said convention, and pending the discussion of this motion another motion was made, and declared carried, that both delegations from Ft. Totten precinct be denied seats in such convention; that said Hall corruptly, arbitrarily, and fraudulently declared such motion carried, when in fact it was not carried, but was voted for by a minority only of the delegates present at said convention, entitled to seats therein; that said Hall refused to allow a vote by ballot on said question, and refused to allow an appeal from his decision, although one was called for; that there was much confusion in said assemblage, and spectators were permitted to vote; and that thereupon 37 delegates, in conjunction with the 7 delegates, organized a convention, in order to avoid personal encounter and possible bloodshed, and, after electing one Voight chairman and one Wardrope secretary, nominated a county ticket, represented by the certificate filed in the county auditor's office on July 19th. The answer further alleges that said county con-

vention, in accordance with the usage of the Republican party, was called for the further purpose of electing delegates to the Republican state convention to be held in Fargo on July 23, 1902, in addition to nominating candidates for county offices; that the so-called Hall convention and the regular convention presided over by Voight each nominated 22 delegates to attend said state convention; that each set of these delegates presented their credentials to the state central committee, and after a hearing on notice, as to which of these delegations should be seated in said state convention, said state central committee decided that the delegation from the Voight convention should be seated; that the said state convention appointed a committee on credentials, and said committee on credentials, after due consideration of all the facts in relation to said contest, decided in favor of seating said Voight delegation; and that thereafter the state convention duly decided in favor of seating said Voight delegation, and against seating the Hall delegation. The issues raised by the answer to the writ are supported by each of the parties to the proceeding by voluminous and numerous affidavits, which are conflicting upon what actually transpired during the preliminary organization of the convention, and which conflict upon the question as to which delegation from the Ft. Totten precinct was entitled to be seated, which conflict upon the question whether the Voight delegates were justified in withdrawing from the Hall convention and organizing another convention in another place, and which further conflict as to whether the Hall convention or the Voight convention had the majority of the rightfully elected delegates to said convention.

The question to be decided by us is which of the two tickets certified to and filed with the county auditor by the officers of the Hall and Voight conventions, respectively, shall be printed upon the official ballot of Benson county. Both certificates are regular in form. The auditor is not empowered by any law to determine which of the two conventions was the regular one, in such cases as this, and is not authorized to print the nominees of both conventions on the same ballot. In this case there was but one of these conventions that could rightfully claim to represent the Republican party, and there was but one regular organization of that party in Benson county on July 19th. Both of these conventions cannot successfully maintain their claim to regularity. Both claim under the same party call for a convention, issued by the regular county central committee. Hence the provisions of chapter 48 of the Laws of 1901, authorizing the county auditor to determine, from the best available sources of information, which organization filing certificates of nomination for different candidates for the same offices in the same party has been longest in existence, does not apply, and neither party so contends. Hence it becomes a question for a decision by this court, settling in this case which of these two rival conventions resulting from a split in the regularly called convention is entitled to be called

the regular convention, and, in consequence of such regularity, entitled to have its nominees for county offices printed on the official ballot. In several cases this court has decided similar issues involving the claim to regularity between rival conventions emanating from one convention and one call. *State* v. *Lavik,* 9 N. D. 461, 83 N. W. Rep. 914; *State* v. *Falley,* 9 N. D. 450, 83 N. W. Rep. 860; *State* v. *Porter,* 11 N. D. 309, 91 N. W. Rep. 944. Both parties in this case have submitted the controversy for decision on the merits, without objections going to the jurisdiction of the court to entertain the proceedings.

The answer alleges that the state convention of the Republican party duly assembled at Fargo, under a regular call, recognized the delegates elected at the Voight convention as entitled to seats in said state convention, and duly seated them therein, after due consideration of the facts, and after hearing all the parties, on notice. After due consideration of this allegation of the answer, we are of the opinion that it states a defense, and, the same having been proven without contradiction, is decisive of the question as to which of these two tickets of county officers is entitled to be placed on the official ballot. In the affidavits presented to us by the defendant, this allegation of the answer is supported by undisputed testimony, and from one of such affidavits we quote the following part, viz.: "And that before the meeting of said state convention the question which of the two said delegations from Benson county should be seated in said convention was brought before the state central committee on notice, and that both sides were fully heard on such question, and affidavits and others proofs produced before said committee by each of said delegations, and that said central committee, after fully and fairly hearing such contest, and duly considering the same, decided in favor of the seating in said state convention the delegation nominated by the convention composed of said forty-four delegates, and also decided against the right of the twenty-two delegates elected by the pretended convention presided over by said A. A. Hall to seats in said convention, and that said report of said central comittee was subsequently duly adopted by said state convention, and said twenty-two delegates elected by the convention composed of said forty-four delegates were by said state convention seated as delegates therein, and participated in all the proceedings of said convention as such delegates, and that said state convention refused to seat said other twenty-two delegates in said convention, or to recognize them as delegates thereto." Thus it is alleged and proven that a contest was initiated before the state central committee for the purpose of determining which of these delegations was entitled to seats in the state convention. Notice was given of the contest, both delegations appeared, evidence was heard, the differences between the opposing delegations submitted for a decision, and the committee rendered a decision that the Voight delegates be admitted to seats. The state convention affirmed the decision of the committee, and the Voight

delegates were seated. The state convention therefore has passed directly upon the question which we would be compelled to decide were we to determine the issues from the evidence, to-wit, which convention was the regular one, and entitled to represent the Republican party in Benson county? If we were to enter upon a consideration of the evidence, to determine which of those nominees should be held entitled to be placed on the official ballot, the merits or demerits of either faction, whether parliamentary rules had been observed, and whether mistakes had been made as to such rules, would not be considered by us at all, save as decisive of or tending to decide the pivotal question in all such cases, viz., which convention was the regular convention called to be held on that day by the persons hitherto duly authorized to do so? By deciding that the Voight delegates were entitled to be seated in the state convention, the convention nominating such delegates was thereby recognized as the regular convention for Benson county. True, the regularity of that convention was only recognized by the seating of the delegates sent by it to the state convention. That, however, was a recognition of it as the regular convention for that purpose, and, if regular for that purpose, it must be the regular convention for all purposes for which convened. A convention cannot be the regular one for one purpose, and not the regular one for another purpose within its scope or authority to act.

It is claimed, however, that the state convention had no authority to pass upon the regularity of the Benson county convention, so far as its action in nominating county officers is concerned; that it derived its authority to recognize the Voight convention by seating its delegates by virtue of the fact that all conventions are clothed with power to decide upon their own membership; that the conventions of each county are finally to determine, when regularly convened by proper authority, who the candidates for offices shall be, subject to review by the courts; and that a person regularly nominated by a convention cannot be lawfully deprived of his right to go on the official ballot of the county by the state convention. This contention, it is claimed, is sustained by the provisions of the Australian ballot law of this state. This law provides for holding caucuses, and authorizes committees to divide counties into precincts, and to fix precinct representation to county conventions. It specifies the manner of organizing and conducting caucuses, and that caucus elections shall be canvassed and certified by the chairman and clerk. It also defines a convention, and prescribes the manner of calling conventions, and how nominations are made, certified, and placed upon the official ballot. It may be admitted that this law provides that a resident elector receiving a regular nomination for a public office by a convention representing a party, as defined in the statute, is thereupon entitled to have his name printed on the official ballot of the party nominating him, in case all the statutory requirements have been complied with. But when the highest governing organi-

zation of a party in the state decides, on a contest, after hearing evidence, and with the contending factions present and before it, and in a matter properly before it and within its authority to decide, that a subordinate convention at which a person was nominated was not the regular convention of the party in a county, can a person nominated at such county convention be deemed to have received such a nomination as entitles him, in case of opposition, to have his name placed on the official ballot of his party? In this case there is no proof of party usage on this question, and no statute upon the subject of the force of a recognition by the highest organization of a party of the regularity of one of two conventions of an inferior organization, caused by one of them forming a separate convention. However, the organization of political parties has existed so long that their powers and authority are matters of common notoriety; and it is fact within the knowledge of all that political parties in this state are composed of precinct, county, and district organizations, all inferior in powers and authority to, and subject to the control and authority, in matters of their government and actions, of, the state convention, composed of representatives from every county, and therefore the highest authority of the party in the state.

We do not deem ·it a question dependent for its solution on the fact whether party usage has been proven as sustaining or authorizing the action of the state convention, but a question of power vested in the ·highest political body by the very nature of the organization of political parties, or any other voluntary association composed of inferior and supreme bodies directly connected with each other. The highest body or convention dictates as to policy and procedure of the lower organization, and decides differences existing therein, and thus is party organization ′effected and maintained. By affiliating with a party, an elector recognizes party organization, and a nominee accepting a nomination contested by a nominee of a rival convention does so with knowledge that the regularity of his nomination is subject to decision by the highest authority of his party, when properly brought before it to determine the regularity of the convention at which he was nominated. *In re Redmond,* (Sup.) 25 N. Y. Supp. 384. Disputes of this kind, involving the regularity of rival conventions and involving the further question as to which set of county officers nominated by these rival conventions are entitled to recognition, are political questions, and should be settled by political ·bodies; and, in the absence of statutes conferring in unmistakable language upon courts the right and duty to decide such controversies, they should not undertake to do so, when the highest organization of the party has passed upon the question, but suffer the same to remain in the domain of politics. Courts have occasionally been called upon to pass upon question similar to the case at bar, and, when not based upon statute law, the rule that such decisions are most properly to be determined as to political questions by political conventions, or′ their committees duly authorized, seems to us

founded on the best reasons. In *Re Redmond,* (Sup.) 25 N. Y. Supp. 381, which was based upon a statute, the court said: "The wisdom of the legislature in imposing upon courts and judges the duty of determining the regularity of political noinations is something which may well be questioned, for it is almost impossible to reach a conclusion in such a case without subjecting the tribunal which renders it to a charge of partisanship. * * * But nevertheless the party cannot exist without its machinery, and, if that machinery is used oppressively and for improper purposes, the right and the power to remedy the evil undoubtedly reside in the party itself; and so it will be found that, in the fiftieth section of the act in question, provision is made for the conduct of political parties by means of conventions and primaries, and by such rules and regulations as those bodies may adopt. But independent of such act, it is a fact so well known and of such long-continued existence as to entitle the same to judicial recognition that political parties have their territorial divisions, and that while each division is, within certain limitations, a law unto itself, so far as the particular territory it assumes to represent is concerned, yet by party usage each of said divisions owes and yields allegiance to some higher power." The syllabus in that case is as follows: "A determination by the state convention of a party, on a contest between two delegations as to the regularity of the conventions by which they were nominated, will be treated by the courts as conclusive." This decision was made under a statute authorizing a nominee dissatisfied with the decision of the county clerk in refusing to file a certificate of nomination to appeal to the courts, and, notwithstanding such statute, the court held the action of the state convention, in recognizing one of the conventions as regular, conclusive, so far as the court was concerned. *In Re Pollard,* (Sup.) 25 N. Y. Supp. 387, the court said: "The proposition which presents itself is simply this: Shall the precedent which has been established by courts and judges, or that which has been established by political conventions, be followed? * * * I still think, as already stated, that the title to regularity of the Patterson faction was pretty clearly established upon the original hearing, and that it would, in view of the provision of the statute which authorizes this proceeding, have been no more than courteous for the party conventions to have adopted the decision of the general term, which was deliberately made after a careful and impartial hearing, but there is no way in which they can be compelled to do so; and consequently it seems to me that the only rule for courts and judges to adopt in this and all other similar contests is that they will interefere only in cases where there has been no adjudication of the question of regularity by some division of the party which is conceded to be superior in point of authority to the one in which the contention arose, provided, of course, that the question of good faith in the making of such adjudications is not involved. The adoption of a different rule will inevitably tend to bring party organizations and the courts into un-

seemly conflicts over questions which are peculiarly within the cognizance of the former tribunals,—a result which certainly ought, if possible, to be avoided." In *Re Fairchild*, 151 N. Y. 359, 45 N. E. Rep. 943, the court of appeals passed upon a question simliar to the one before us. When that decision was rendered, the law of 1896, pertaining to elections, was in force. That law provided that questions pertaining to the validity or legality of certificates of nomination should be determined in the first instance by the officer with whom such certificate of nomination was filed, and that the supreme court should have summary jurisdiction to review the determination and acts of such officer, "and to make such order in the premises as justice may require." In that case the only question involved was, which of two conventions was regular. It was conceded that, if a convention was regular, it had the same authority to elect congressional delegates as it had to elect state or judicial delegates. In that case it is said: "It is much more proper that questions which relate to the regularity of convention, to the nomination of candidates, and the constitution of committees, should be determined by the regularly constituted party authorities, than to have every question relating to a caucus, convention, or nomination determnied by the courts, and thus, in effect, compel them to make party nominations and regulate the details of party procedure, instead of having them controlled by party authorities. We think that in cases where questions of procedure in conventions or the regularity of committees are involved, which are not regulated by law, but by party usage and customs, the officer called upon to determine such questions should follow the decision of the regularly constituted authorities of the party, and courts, in reviewing the determination of such officer, should in no way interfere with such determination." In *Cain* v. *Page*, (Ky.) 42 S. W. Rep. 336, the court decided that the action of the state convention in deciding what committee was the governing body in a county organization was conclusive upon the courts, even after a contest between two rival candidates before such county convention. The court said: "The voice of that convention was the very voice of the Democratic party. The word of the convention is the law of the party, and courts cannot look beyond this word or this law, because there is no other." This decision was expressly followed in *Moody* v. *Trimble*, (Ky.) 58 S. W. Rep. 504, 50 L. R. A. 810, the court saying: "The averments of the answer, taken in connection with those of the petition, and which are emphasized by the recitation of the Lexington resolution, show that there was a dispute, in good faith, as to who was the true nominee of the Paris convention. A settlement of this dispute might possibly be had in the courts, when the correctness of the various ruling of the presiding officers of the meeting would have to be inquired into, as well, possibly, as the regularity of the credentials of the various delegates. But while we do not now decide that this cannot be done, it is certain that such questions are political,

rather than judicial, in their character; and therefore the court will entertain jurisdiction to settle them, if at all, only in the event the governing authorities of the political parties have failed to do so. The settlement of such questions, in the nature of things, should be left to party authority; and therefore we will not scan too closely party rules which undertake, however imperfectly, to confer authority on its various committees to manage party affairs to the best interests of the organization, nor deny such authority, even if it be conferred in terms somewhat general. We construe the party rules in force when the Paris convention met as sufficiently explicit to authorize the state central committee to settle disputes of the nature involved in this case, and especially do we think that authority existed in the state convention to provide a means, if none existed, of settling such disputes." The case of *Twombley* v. *Smith,* (Colo. Sup.) 55 Pac. Rep. 254, is cited as authority in favor of the plaintiff. That decision was based on the fact that the state convention had no contest before it as to the seating of the delegates seated therein. In that case a vigorous dissenting opinion was filed by Chief Justice Campbell, and his views, as expressed in his dissent, seem to us to be supported by the better reasons. It is earnestly urged that the cases cited in defendant's brief and cited herein are not applicable to the facts of this case, as they do not pass upon the rights of nominees, but simply decide questions of regularity of organizations or committees. This is true as to some of the cases. Our decision is based upon the ground that the Voight convention was alone the regular convention of Benson county, because sustained by the state convention. Such being the case, the Hall convention did not represent the party organization in that county, and could not regularly nominate officers. In all cases the decisive question is as to which convention is the regular convention of the party, and the fact that the conventions have made nominations for offices cannot, it seems to us, be controlling, under our construction of the statute prescribing how nominations are made.

The application for a peremptory writ of mandamus is therefore denied. All concur.