(101 N. W. 310.)

---

STATE EX REL. JAMES C. MITCHELL v. LOUIS A. LARSON, COUNTY AUDITOR.

Opinion filed October 31, 1904.

**Determination of Contest by State Central Committee Approved by Convention Is Conclusive Upon Courts.**

1. Where the state central committee of a political party has heard and determined a contest, after notice and upon the merits, between contesting delegates to a state convention, as to the regularity of the county conventions by which they were elected, and its action has been affirmed by the convention, such determination is conclusive upon the courts, even as between rival nominees of such conventions for county offices. Following and affirming State v. Liudahl, 91 N. W. 950, 11 N. D. 320.

**Same — Rival Conventions — County Auditor's Duty as to Official Ballot.**

2. The relator was nominated by one of two rival Republican conventions for the office of county treasurer of Ward county. Both conventions elected delegates to the state convention. The question of regularity was presented by the delegates to the state central committee upon the merits for decision, and was determined in favor of the relator's convention, which action was affirmed by the state convention, and subsequently by a second state convention. *Held,* that it was the legal duty of the county auditor to print. the names of the relator and his co-nominees upon the official ballot as the nominees of the republican party, and a writ of mandamus will be issued to compel him to do so.

Application by the state, on the relation of James C. Mitchell, for a writ of mandamus to Louis A. Larson, county auditor of Ward county, N. D.

Writ granted.

*John E. Greene,* for plaintiff.

*James Johnson, A. M. Christianson* and *E. L. Sutton,* for defendant.

YOUNG, C. J. The call of the Republican county central committee of Ward county for a county convention to be held in the city of Minot on May 14, 1904, to nominate county officers, and to elect delegates to the legislative, judicial and state conventions, resulted in the holding of two conventions—one known as the "Reorganizers' Convention," and the other as the "Murphy Convention." Each claimed to be the regular convention of the Republican party of that county, and each nominated a full set of candidates for county offices, and filed with the county auditor nominating certificates in due form. Each convention elected delegates to the Republican legislative and judicial conventions, and the two state conventions which were held in Fargo and Grand Forks on May 18th and July 20th, respectively. The question involved in this proceeding arises from an attempt on the part of the nominees of the two rival conventions to have their names printed upon the official ballot as the regular Republican nominees. The defendant is the county auditor of Ward county, and, as such, is charged with the duty of printing and distributing the official ballots. He is also the nominee of the Murphy Convention for the same office. The relator is the nominee of the Reorganizers' Convention for the office of county treasurer. Upon his application, and on October 26, 1904, an alter-

native writ of mandamus was issued by this court, commanding the defendant, as county auditor to cause the names of the nominees of the Reorganizers' Convention to be printed upon the official ballot in the Republican column, or to show cause to this court on the 31st day of October why he had not done so. Upon the return day, Joseph W. Briggs, who was nominated by the Murphy Convention for the office of register of deeds, requested and was granted leave to intervene and file an answer, and by request of defendant's counsel the answer presented by him, which was verified by both Briggs and the defendant, was accepted as the answer of the latter to the alternative writ. Before the answer was filed counsel for defendant, under a special appearance, moved to dismiss the alternative writ for alleged want of service. These as well as a number of other grounds urged in support of the motion are without merit, and the motion was denied.

It may be doubted whether the answer presents any issue whatever for determination. The affidavit of the relator alleges, and the answer substantially admits, that two state conventions have passed upon the question of the regularity of the two county conventions, and in each case sustained the so-called Reorganizers' Convention, which nominated the relator. Under these circumstances, the allegations of the relator's affidavit and of the answer relating to the proceedings taken by each convention, and the qualifications and number of delegates of which each was composed, and the cause and circumstances of the split, need not be stated. They are entirely immaterial.

This case presents the same questions which were considered in a decision by this court in State ex rel. v. Liudahl, 11 N. D. 320, 91 N. W. 950, in which the opinion was filed October 25, 1902, and is controlled in every respect by the decision in that case. In that case, as in this, two sets of nominees for county offices of rival county conventions sought to have their names printed upon the official ballot in the Republican column. It was shown that both conventions had elected delegates to the state convention, that the state central committee had heard the merits of the contest and decided it, and that its action had been approved by the convention. It was held, after careful consideration and a full review of the authorities, that under such circumstances the decision of the highest party tribunal of the state must be taken as conclusive upon the courts on the question of regularity. In that case it was said: "The

highest body or convention dictates as to policy and procedure of the lower organization, and decides differences existing therein, and thus is party organization effected and maintained. By affiliating with a party an elector recognizes party organization, and a nominee accepting a nomination contested by a nominee of a rival convention does so with knowledge that the regularity of his nomination is subject to decision by the highest authority of his party, when properly brought before it to determine the regularity of the convention at which he was nominated. In re Redmon (Sup.) 25 N. Y. Supp. 384. Disputes of this kind, involving the regularity of rival conventions, and involving the further question as to which set of county officers nominated by these rival conventions are entitled to recognition, are political questions, and should be settled by political bodies; and, in the absence of statutes conferring in unmistakable language upon the courts the right and duty to decide such controversies, they should not undertake to do so, when the highest organization of the party has passed upon the question, but suffer the same to remain in the domain of politics. Courts have occasionally been called upon to pass upon questions similar to the case at bar, and, when not based upon statute law, the rule that such decisions are most properly to be determined as to political questions by political conventions, or their committees duly authorized, seems to us founded on the best reasons." The following authorities sustain our conclusions in the above case, and may be added to those cited in the opinion: Davis v. Hambrick, 109 Ky. 276, 58 S. W. 779; Blais v. Brazeau (R. I.) 56 Atl. 186; Williams v. Lewis (Idaho) 54 Pac. 619; State v. Weston (Mont.) 70 Pac. 519. The opinion of the Supreme Court of Wisconsin in the recent case of State v. Houser, 100 N. W. 964, involving the regularity of two rival Republican state conventions, turned entirely upon a provision in the Wisconsin statutes. The National Republican Convention had recognized the so-called Stalwart Convention as the regular one, and had seated its delegates. The state central committee disregarded the action of the convention, and recognized the La Follette Convention, and declared and certified that its nominees were the regular nominees of the Republican party of that state. The court declined to investigate and determine which convention was regular in point of fact, or to go further than to ascertain which of the conflicting adjudications by the party authorities should control the secretary of state in preparing and printing the official ballot.

A majority of the court, under the coercion of a statute which required that "preference in designation. shall be given to the nomination of one certified by the committee [held to mean state central committee], which has been officially certified to be authorized to represent the party," was constrained to hold that the decision of the state central committee was controlling.  So far as that case touches the question, it supports the view that an adjudication by a party tribunal is conclusive upon the courts.  In summarizing, Judge Marshall, who wrote the majority opinion, said:  "We have ascertained that the highest party authority as recognized by our law has spoken upon the subject in hand.  No jurisdictional defect in that regard has been found to exist.  We must accept what it has decided to be the law."  The members of the court who participated in the decision of the Liudahl case are confirmed in the assurance of the correctness of the conclusions therein announced, and the entire court is agreed that the conclusions announced in that case should be adhered to, and that they are controlling in this case.  Counsel for defendant do not attack its soundness.  They expressly disclaim any such purpose.  As we understand it, they seek to avoid its application by claiming that the contest was not heard upon the merits by the state central committee.  In this behalf it is alleged, in reference to the action taken by the Fargo convention, that the Murphy delegates presented to the state central committee, and offered in evidence before them, in support of their claim, "fifteen lengthy affidavits;   *   *   *   that said Republican state central committee held a short session, not exceeding ten minutes; and that in no manner considered the affidavits, credentials, or records presented to them, but, merely on motion of one of the members, seated the members of the so-called Reorganizers' delegates, without passing on the merits of the so-called Murphy delegates to participate in such convention."  As to the proceedings at the Grand Forks convention, it is alleged that a contest was presented to the state central committee by the Murphy delegates, and that the committee acted without considering the affidavits and records presented to them, and denied their right to participate in the convention; that the committee on credentials thereafter appointed by the convention "refused to give the Murphy delegates the right to present their rights and their side of the matter, allowing them only ten minutes to do so; that it would have taken said committee several hours in which to examine the testimony which was offered by said

Murphy delegates; that said Murphy delegates were refused permission to present such matter to the Republican state convention; that said state central committee was prejudiced and partial." The evidence completely negatives the claim that there was no hearing before the state central committee at Fargo. It is shown that the controversy was presented to the committee for decision pursuant to the following written resolution, which was adopted at a caucus at which all the delegates were present in person or by proxy, and is signed by the chairman and secretary of the delegation: "Resolved, that it is hereby agreed that contest * * * shall be submitted for final determination to the state central committee, and we hereby agree to abide by the decision of said committee." Pursuant to the said agreement, the committee met on the night of May 17th to hear contests, and remained in continuous session and devoted its entire time from 9:30 to 12:30 o'clock to the hearing of this contest. Each faction was represented by an attorney and by three laymen. At the conclusion of the hearing the committee adjourned to go into executive session the following morning, at which time it was decided, by a vote of 28 to 8, that the Reorganizers' Convention was the regular one. This action was ratified by the committee on credentials, and affirmed by the state convention. To what extent the question was reinvestigated at the Grand Forks convention does not clearly appear, and it is not material. It does appear that a full hearing was had upon the merits at the Fargo convention, and that the decision of that convention was not revised or reversed by the subsequent convention at Grand Forks, but, on the contrary, was affirmed. Under these circumstances, the determination of the state central committee, followed by an affirmance by the convention upon the question of regularity, is conclusive; and it is the legal duty of the county auditor to print the relator's name, as well as the names of the other nominees of the Reorganizers' Convention upon the official ballot as the Republican nominees.

A peremptory writ will issue, commanding him to do so, and containing such further directions as shall be essential to accomplish the purpose of the writ. All concur.