THE STATE OF NORTH DAKOTA, EX REL. H. H. STEEL, GEORGE WHITFORD, PETER CONNOLLE, P. S. FITZMAURICE AND WILLIAM CLIFFORD, *v.* J. W. FABRICK.

Opinion filed October 13, 1908.

**Supreme Court — Jurisdiction — Original Writs.**

1. The jurisdiction of the Supreme Court to issue original writs extends to questions affecting the sovereignty, franchises or prerogatives of the state, or the liberties of the people.

**Same — Adequacy of Relief.**

2. Where the right to be enforced pertains to matters of private or local concern alone, though publici juris, the jurisdiction belongs to the district court, and not to the Supreme Court, unless circumstances of such exceptional character are shown to exist that adequate relief cannot be obtained in the district court.

**Same — Questions Involved — County Division.**

3. The sovereignty or franchises of the state are not directly affected by proceedings for the division of a county.

**Same — Rights of Electors.**

4. Under section 2329, Rev. Codes 1905, as amended by chapter 60, page 85, laws of 1907, the electors of a county have a right to have submitted to them, and to vote upon, all petitions in reference to the division of a county that conform to the statute, although the petition last presented to the county commissioners may conflict, as to the territory to be embraced within the proposed counties, with the petitions first presented and acted upon.

**Same — Successive Petitions — Order of County Commissioners — Auditor's Duty.**

5. Where a petition is presented for a division of a county, and the county commissioners order the submission of the question of the division of the county, pursuant to the petition, to a vote at the next general election, the county auditor is without authority to refuse to give notice that the question of the division of the county, pursuant to the petition, will be voted on at the next general election, on the alleged ground that the county proposed to be organized, pursuant to the petition, is to contain in part the same territory as the territory to be embraced in another county proposed to be organized pursuant to another petition, which was on file and had been acted on by the commissioners when the petition in this case was presented to the commissioners and acted on.

Application by the state, on the relation of H. H. Steele and others, for a writ of mandamus to J. W. Fabrick.

Writ granted.

*George A. Bangs* and *F. B. Andrews,* for petitioners.

Delays incident to appeal, occasioning a denial of justice, warrants the prerogative writ. Gaines v. Rugg, 148 U. S. 228, 13 Sup. Ct. Rep. 611; State v. Hart, 57 Pac. 415; State v. Dick, 79 N. W. 421; State v. Johnson, 79 N. W. 1080; Merced Mining Co. v. Fremont, 7 Cal. 130; Clark v. Crane, 57 Cal. 634; Cariaga v. Fernald, 5 Pac. 615.

Official refusal in advance to perform duty—justifies action before actual default. State v. Rotwitt, 37 Pac. 8445; State v. Metcalf, 100 N. W. 923; Brandt v. Murphy, 88 Miss. 84; State v. Wrightson, 56 N. J. L. 126; In re Whitney, 3 N. Y. Supp. 838.

*George A. McGee* and *Francis J. Murphy,* for respondent.

Conflicting petitions cannot be submitted at the same time. Pennell v. Armstrong, 46 N. W. 618; State v. Board of Co., Comrs. 338 N. W. 40.

Morgan, C. J. This is an application for a peremptory writ of mandamus. The application is based upon the refusal of the respondent to comply with an order of the board of county commissioners of Ward county, directing him to give notice that the question of the division of Ward county and the formation of Renville county would be submitted to the electors at the November, 1908, election, and to otherwise comply with the order of said board.

The application for the writ is based upon an affidavit which sets forth in detail the facts leading up to the application, and the territory out of which the county of Renville is to be composed is described in detail. Other facts are stated in the affidavit as follows: (1) That the relators are free holders, taxpayers, and electors of Ward county, and are residents, taxpayers and qualified electors in the territory sought to be detached from Ward county and organized as Renville county. (2) That on July 31, 1908, a petition was filed in the office of the county auditor of Ward county, and thereafter presented to the commissioners of said county. This petition is set forth in the affidavit, and it states the necessary facts to authorize the county commissioners to submit to a vote of the people the question whether the county of Ward should be divided, and the county of Renville organized and composed of the territory therein described. (3) That the petition was signed by a majority of all the voters residing in the territory to be de-

tached from Ward county out of which the county of Renville is to be formed. (4) That upon the presentation of the petition to the county commissioners the same was granted by them, and an order was made by the commissioners directing that the question of the formation of Renville county be submitted to a vote of the people at the November, 1908, election, and the respondent, as county auditor, was directed to publish due notice that such question was to be submitted to the people as prescribed by law. (5) That the county auditor of Ward county has advised the respondent that the order of the county commissioners directing the submission of the question of the division of Ward county was without authority of law, and that the respondent has often stated that he would not comply with the order of the county commissioners, and would not submit the question to a vote of the people, unless compelled to do so by an order of court. (6) That a demand upon the state's attorney has been made by the relators to prosecute this proceeding, or to permit the use of his name in the proceeding, but the demand has been refused. (7) That the Attorney General of the state has refused to prosecute this proceeding, and has refused to permit his name to be used in the proceeding. (8) The affidavit further states as follows: "That an exigency exists, because of which your petitioners should not be required to make application to the district court for a writ of mandamus herein, in this: That through the exercise of the right of appeal, and the ordinary delays of litigation, a final decision herein cannot be rendered until after the next general election, and justice would be thereby denied; that the matters herein set forth are publici juris." The relators pray that the respondent be compelled by a writ of mandamus to comply with the order of the county commissioners, directing him to submit the question of the division of Ward county in accordance with said petition of the voters in said territory.

Upon the filing of the affidavit and application for a writ of mandamus, an order was issued by this court, directing the respondent to show cause at Bismarck on September 25, 1908, why the writ should not be issued and he compelled to comply with the order of the county commissioners. On the return day fixed by said order the parties appeared, and the respondent filed his written return to the order to show cause, and objected to the issuance of the writ. Such objections are the following in substance: That

the action of the board of county commissioners in submitting the question of the formation of Renville county was null and void, for the reason that, prior to the filing of the petition for the formation of said Renville county, a petition had been filed for the formation of the county of Lake out of the territory now comprised within the county of Ward; that the said last-named petition was in all respects in compliance with the provisions of the statute regulating the division of counties; and that the prayer of the said petition was granted by the county commissioners, and the respondent was by them directed to comply therewith and submit the question of the formation of Lake county to the voters. In the return of the respondent it was further alleged that a large part of the territory to be comprised within the county of Renville as shown by the petition of the voters for the organization thereof, is included in the territory proposed to be organized as Lake county, as shown by the petition filed and acted upon before the petition for the formation of Renville county was presented to said board; and for the reasons alone that the petitions for the organization of the counties of Lake and Renville comprised in part the same territory the respondent did refuse to place the question of the organization of Renville county upon the ballot to be voted upon in 1908. No question is raised by the return, except that the petition in this case conflicts, so far as territory is concerned, with the petition for the creation of Lake county, and that in consequence of such conflict the result may not be decisive on the questions to be voted on.

The respondent raises no question as to the jurisdiction of this court to determine the issue raised by the return under the constitutional provisions granting to it jurisdiction to entertain applications for writs of mandamus. The respondent has expressly stipulated that no objection shall be raised by him to the jurisdiction of this court to determine the issues raised. The stipulation, however, does not and cannot of itself confer jurisdiction, and it is of no effect. In a similar proceeding affecting the location of the county seat in Rolette county, 17 N. D. 543, 117 N. W. 864, argued and submitted on the same day as this application, the jurisdiction of this court to issue the writ of mandamus was expressly challenged by a motion in writing to quash the order to show cause. The question of the jurisdiction of this court to entertain the application and to issue the writ will therefore be determined, without regard to the stipulation of the parties that they submit to the

jurisdiction without objection. The relators in this case have been fully heard on the question of jurisdiction, as they appear in this court by the same counsel who appear for the relators on the application in the Rolette county case, in which objections to the jurisdiction have been filed, and · such objection fully argued by the counsel for the relators in both cases.

In what cases and under what circumstances this court will issue original writs under our constitutional provisions has often been considered and discussed in the prior decisions of this court. It has been so fully and exhaustively considered and treated that no new principle need be invoked for the determination of this application. It is necessary only to apply the facts of this case to the principles so plainly established by the prior decisions, and from such application determine whether the relators are enttled to invoke the original jurisdiction of this court as defined in the Constitution, and fully explained by such prior decisions. In respect to the jurisdiction of this court on applications of this kind, the constitutional provisions are as follows:

"Sec. 86. The Supreme Court, except as otherwise provided in this Constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, and shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law.

"Sec. 87. It shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, injunctions, and such other original and remedial writs as may be necessary to the proper exercise of its jurisdiction, and shall have authority to hear and determne the same," etc.

These sections have been under consideration in many cases by this court. From these cases it is established without dissent that the jurisdiction is not to be exercised unless the interests of the state are directly affected. Merely private rights are not enough on which to base an application for the issuance of original writs by this court. The rights of the public must appear to be directly affected. The matters to be litigated must not only be publici juris, but the sovereignty of the state, or its franchises or prerogatives, or the liberties of its people, must be affected. Before the court will, in the exercise of its original jurisdiction, issue prerogative writs, there must be presented matters of such strictly public concern as involve the sovereign rights of the state, or its

franchises or privileges. The often quoted statement of the rule as to the original jurisdiction of the Supreme Court to issue writs of a prerogative character, as given in Attorney General v. City of Eau Claire, 37 Wis. 400, is well expressed and clear: "To warrant the assertion of original jurisdiction here, the interest of the state should be primary and proximate, not indirect or remote; peculiar, perhaps, to some subdivision of the state, but affecting the state at large in some of its prerogatives; raising a contingency requiring the interposition of this court to preserve the prerogatives and franchises of the state in its sovereign character." This statement of the rule has been approved in many cases in this court, and notably in State v. Archibald, 5 N. D. 359, 66 N. W. 234; State v. Nelson, 1 N. D. 88, 45 N. W. 33, 8 L. R. A. 283, 26 Am. St. Rep. 609; Elevator Co. v. White, 11 N. D. 534, 90 N. W. 12; State v. Wilcox, 11 N. D. 329, 91 N. W. 955; State v. McLean Co., 11 N. D. 356, 92 N. W. 385; State v. Nohle, 16 N. D. 168, 112 N. W. 141; State v. Holmes, 16 N. D. 457, 114 N. W. 367; State v. Burr, 16 N. D. 581, 113 N. W. 705.

In this case the matter involved pertains to the division of a county. Counsel forcibly urge that these matters are of great public concern, and involve the sovereignty and franchises of the state, by reason of the fact that the electors of Ward county will be deprived of voting upon this matter of great concern to them unless the order be complied with to submit the proposition of the division of the county to them. We cannot agree with the contention of the relators that the state at large is proximately affected or concerned in the question of the division of Ward county, or whether that county be divided into two counties, or whether it is to be divided into four counties. It is a question of public concern to the residents of the proposed counties, but that it directly concerns the state at large we cannot see. It is no more a matter affecting the state at large than would be the question of the formation of particular school districts out of prescribed territory, or of the location of a school house therein. It pertains wholly to the private convenience of the local inhabitants.

It is strenuously urged that the rights of these petitioners and relators are parallel with and of the same character as the rights of the electors as declared in State v. Falley, 8 N. D. 90, 76 N. W. 996; State v. Falley, 9 N. D. 450, 83 N. W. 860; State v. Lavick, 9 N. D. 461, 83 N. W. 914; State v. Porter, 11 N. D. 309, 91 N. W.

944; State v. Liudahl, 11 N. D. 320, 91 N. W. 955; State v. Larson,. 13 N. D. 420, 101 N. W. 315. Those cases all refer directly to the exercise of the elective franchise in the election or nomination of candidates for office. In some of those cases the exercise of the rights of franchise, under the facts of those cases, was described by the court as a most sacred right, and involved much more than a contest between individuals as to which of them was entitled to hold a certain office. For that reason alone those cases establish the fact that the exercise of the elective franchise involved the sovereignty of the state. We think it apparent that a division of a county in no way affects the sovereignty of the state, and that the sovereignty of the state is directly affected in the selection of the officers of the state, or of its counties, by the electors. For these reasons it is clear that the facts do not present a question of such concern to the state at large as to call for the issuance of the writ. See Russell v. Jacoway, 33 Ark. 191.

It is the contention of the relators that the circumstances shown by the affidavit warrant this court in assuming jurisdiction to issue the writ, although the facts may not present a question publici juris that affects the sovereignty or franchises or prerogatives of the state, or the liberties of its people. In other words, it is their contention that this court should issue the writ, although the facts present matters of concern to only one locality within the state, and do not present any question where the sovereignty of the state is affected. That this court will sometimes issue the writ when there is an exigency or emergnecy, or exceptional circumstances arise, is well settled. In State v. Nohle, 16 N. D. 168, 112 N. W.. 141, the court said: "It has repeatedly been held by this court that the writ here prayed for is strictly a prerogative writ, and that the same will be issued only in exceptional cases." This statement referred to an application by a private relator. In State v. McLean County, 11 N. D. 356, 92 N. W. 385, the court said: "Upon such a showing we discover no exigency calling for the interposition of this court at the instances of a private relator. From our standpoint, the case is one calling for unusual caution and the exercise of great deliberation on the part of the judicial department of the state. Certainly nothing in this case calls for the hasty action which would be involved if this court should initiate proceedings. by putting forth its prerogative powers in opposition to the advice of the Attorney General." See, also, Wheeler v. County, 9 Colo. 248, 11 Pac. 103.

We are of the opinion that exceptional circumstances are shown which entitle the relators to the issuance of the writ, and that a practical denial of justice will result to them unless the writ is issued. As before stated, there are three petitions for a division of the county before the county commissioners. The petition for the creation of the counties of Renville and Burke conflict with the petition for the creation of Lake county, so far as territory is concerned. If the relators are compelled to first apply to the district court for the writ, it is doubtful whether a final decision in district court can be had in time for the submission of the question to the voters at the November election, and in case of an appeal to this court it is certain that the matter could not be decided in time for submission at the coming election. The necessary consequence would therefore be that the petition of the relators would avail them nothing, and another petition must be presented to secure the right to vote on the question at the 1910 election. The statute which control the proceedings for division of counties is section 2329, Revised Codes 1905, as amended by chapter 60, page 85, Laws of 1907, which reads as follows: "Whenever it is desired to form a new county out of one or more of the then existing counties, and a petition praying for the formation of such new county, describing the territory proposed to be taken for such new county, together with the name of such proposed new county, signed by a majority of the legal voters residing in the territory to be stricken from such county or counties (as appears by the number of votes cast for governor at the last preceding general election), shall be presented to the board of county commissioners of each county to be affected by such division, and it appearing that such new county can be constitutionally formed, it shall be the duty of such boards of county commissioners to make an order providing for the submission of the question of the formation of such new county to a vote of the people of the counties to be affected, at the next succeeding general election, and notice thereof shall be given, the votes canvassed, and the returns made as in the case of the election of members of the legislative assembly; and the form of the ballot to be used in the determination of such question shall be 'For New County' and 'Against New County.'" Under this section the impossibility of securing a final decision before the election in 1908 would necessarily deprive the petitioners for the creation of Renville county of the right to express their choice on the important question of

the division of Ward county until the election of 1910, as there is no provision for calling a special election to determine such matters.

Under said section the question to be voted on as to a division of a county must be voted on at the next general election after the presentation of the petitions to the county commissioners and the making of an order thereon by them. Another petition would therefore have to be presented before the question could be submitted to the voters at the election of 1910. Before that time changes in population may occur, and the county of Ward may be divided and the county of Lake may be created by the people at the 1908 election. By reason of these facts, the petitioners may be prevented from ever being permitted to vote upon the question pursuant to their wishes as contained in their petitions, which the auditor refuses to comply with. It is therefore apparent that unusual delay will occur before a determination of the question can be regularly had in district court. The matter of the division of a county is one of public importance to the people of the county. The statute gives the people a right to express a choice on that question. Inasmuch as the question must be voted on at the next succeeding election after the presentation of the petition to the commissioners, it is not improbable that delays or refusals by some official will cause the same situation in 1910 as now confronts the petitioners. We are fully convinced that only matters of the gravest importance should be considered sufficient to warrant this court in issuing prerogative writs at the request of private relators. Nevertheless we deem the circumstances and conditions surrounding this case to show such a state of facts as to bring it within the exception to the general rule. By refusing to entertain the writ now, it is inevitable that a delay of two years will be occasioned. A delay for so long a period on a matter of this importance is a potent consideration in favor of taking jurisdiction. In view of the fact that an appeal to the supreme court can follow any decision of the district court in the case, we think the interests of justice demand that this court should act and dispose of the controversy now, and prevent further delay on a matter of such great consequence to the people of Ward county.

It is contended by the respondent that his action was lawful, inasmuch as the petitions filed subsequent to the one for the formation of Lake county conflict, so far as the territory to be comprised within the counties, with the territory out of which Lake

county is to be composed, is concerned; in other words, that Renville and Burke counties are to comprise a part of the same territory that is to comprise Lake county. It is therefore his contention that said section 2329 should not receive a strict and literal construction, but should be construed so as to further the legislative intent in its enactment; that is, to facilitate the division of counties. Respondent's argument in favor of that construction is based upon the contention that each voter is entitled to vote on each independent proposition, which may result in two propositions each receiving a majority of all the votes cast, and thereby giving two proposed counties, to be composed in part of the same territory, the required votes, which would defeat the proposed organization of each county.

Under the language of said section 2329 there is no prohibition against submitting any number of propositions for the division of a county. The language is general that on the filing of a petition for the division of a county, stating the necessary facts, the commissioners shall make an order for the submission of the question of the division of the county to the voters. The section does not prescribe any limitation as to the number of petitions, nor is there any prohibition against submitting petitions to a vote of the people if the petitions are conflicting as to territory. We find nothing in the language of that section warranting us in construing it to mean that the first petition filed can only be submitted to a vote if there be a conflict as to the territory to be comprised in the counties proposed to be created. We think it clear from the language of the section that all petitions are to be submitted to a vote when legal in form and contents. The auditor was without authority to refuse to give notice of the election upon the proposition of the creation of Renville county.

The question whether petitions for the division of a county that conflict as to territory can legally be submitted to a vote of the people has been before the supreme court of Nebraska and Minnesota, and these courts have reached opposite conclusions. In Nebraska. it is held that the commissioners have a right to reject all petitions. after the first one presented, where the subsequent ones include a part of the same territory proposed to be included in a county by the first petition. State v. Armstrong, 30 Neb. 493, 46 N. W. 618,. 9 L. R. A. 382. In Minnesota it is held, under a statute practically the same as ours upon the question of the submission of such questions to a vote, that all petitions for a division of a county must be-

submitted to a vote of the people, although the petitions show that there is a conflict so far as territory is concerned. On that question the supreme court of Minnesota says: "A majority of the members of the court, however, are of the opinion that this construction of the statute is not justified by the specific directions of the statute requiring the submission of all petitions where the petitions therefor are found to conform to the law, and that the statute must be construed as requiring the submission of all legal petitions, whether conflicting or otherwise." State v. Commissioners, 67 Minn. 352, 69 N. W. 1083. In State v. Larson et al., 89 Minn. 123, 94 N. W. 226, the supreme court limited the application of the language quoted, so that it applied only to petitions showing a conflict of territory, and not to a conflict as to minor matters. The modification of the decision in no way affects the principle in the case at bar. In State v. Falk, 89 Minn. 269, 94 N. W. 879, the rule in State v. Larson, supra, was adhered to. The construction given in the statute by the Minnesota court meets with our approval, as it gives effect to the legislative will more completely than does the Nebraska rule. It insures to the voters of a county an opportunity to fully express themselves upon the question of the division of the county. By curtailing or limiting the number of petitions that may be filed which include a part of the same territory, it necessarily follows that the choice of the people is not given the full expression contemplated by the statute.

For these reasons, the writ of mandamus is granted. All concur.