STATE OF NORTH DAKOTA, EX REL. J. H. MURPHY, v. WILLIAM GOTTBREHT, ET AL.

Opinion filed October 13, 1908.

**Supreme Court — Original Writ — Jurisdiction.**

1. The jurisdiction of the Supreme Court to issue writs under existing constitutional provisions ordinarily extends only to cases publici juris, wherein are directly involved the sovereignty of the state, its franchises or prerogatives, or the liberties of its people.

**Same — Change of County Seat — Questions Publici Juris.**

2. The matter of the change of the location of the county seat of a county is not a question publici juris, affecting the sovereignty or franchises of the state.

**Same — Mandamus.**

3. The mere fact that delays might occur if legal proceedings are instituted in the district court, and that an appeal might be taken to this court from the district court, does not present such exceptional circumstances as would constitute a reason for issuing a writ of mandamus by the Supreme Court to compel the county commissioners to act in matters solely pertaining to the removal of a county seat.

Application by the state, on the relation of J. H. Murphy, for writ of mandamus to William Gottbreht, and others.

Application denied.

*George A. Bangs, Albert Nelson,* and *D. J. McLennon,* for relators.

*Burke, Middaugh & Cuthburt* and *H. E. Plymat,* for respondents.

MORGAN, C. J. This is an application by private relators for a writ of mandamus to compel the respondents, who are the county commissioners of Rolette county, to submit to the electors of said county, at the next general election, the question of the removal of the county seat of said county from Rolla to Rolette. The application is based upon an affidavit setting forth: '(1) That the relator is a freeholder, taxpayer, and elector of Rolette county, and that he signed a petition for the removal of the county seat of said county. (2) That on April 20, 1908, a petition was presented to the board of county commissioners, praying for the removal of the county seat of said county from Rolla to Rolette. (3) That said petition was verified, as required by statute, and contained all

the facts required to be set forth in the petition by the statute, and was signed by the requisite number. of electors. (4) That on July 7, 1908, the respondents by an order refused to submit such question to the electors of said county. (5) That the attorney-general of the state and the state's attorney of Rolette county have been requested to prosecute these proceedings, and such requests have been denied. (6) That the relators have no other plain, speedy, or adequate remedy in the ordinary course of law. (7) That an emergency or exigency, exists, because of which the petitioner should not be required to make an application to the district court for the writ. Such exigency consists in the fact that, through an appeal, and the ordinary delays incident to litigation, a final decision upon the question cannot be rendered until after the next general election, and justice, would thereby be defeated.

Upon the presentation to the court of the affidavit, an order to show cause why the writ should not be granted as prayed for was issued, and such order was made returnable at Bismarck, on the 25th day of September, 1908. On said day the parties appeared, and the respondent filed a motion to quash the order to show cause, upon the expressed ground that the facts shown by the affidavit do not show facts that would authorize this court to issue the writ of mandamus, under sections 86 and 87 of the constitution, defining the jurisdiction of the supreme court to issue such writs. The question raised by the motion to quash the order to show cause presents the same question as to the jurisdiction of this court as that decided by the court in State ex rel Steele et al. v. J. W. Fabrick, 17 N. D. 532, 117 N. W. 860, in which our opinion has just been handed down. In that case the court held that the question of the division of a county upon application of qualified electors did not in any way involve any question affecting the sovereignty of the state, its franchises or prerogatives, or the liberties of the people; that it presented a question of public concern to the people of the county only, and did not in any way affect the people of the state generally, and was in no way publici juris so far as the state at large is concerned. The jurisdiction to issue the writ was, however, assumed, and the writ was issued in that case, for the reason that the facts showed the existence of such an emergency and exceptional circumstances that might be followed by a denial of justice unless the writ was issued. See Russell v. Jacoway, 33 Ark. 191. Neither in the case at bar nor in the Fabrick case were the franchises or prerogatives

or sovereignty of the state at large affected. In both cases matters of local concern only were affected. The facts in that case showing the existence of exceptional circumstances are not present in this case. In that case the facts were that three petitions had been presented to the commissioners, each asking for the division of Ward county, and each praying for the creation and formation of a new county out of said Ward county, and the county auditor had refused to give notice that the question of the division of Ward county, pursuant to two separate and independent petitions, would be voted upon at the 1908 election, although the commissioners had made the order granting each petition. In this case the question of the change of the location of the county seat alone is affected.

We do not think that the two cases present parallel facts, so far as the existence of an emergency is concerned. In this case the only prejudice to the relator that can possibly follow, if they are compelled to resort to the district court, is a delay of two years before the question may be voted on. In the other case there was added another element of prejudice likely to follow—a change of circumstances by reason of the fact that the county lines might be changed by the formation of a new county, pursuant to a petition on which the commissioners had acted and which was ordered to be submitted to a vote at the November, 1908, election. We do not deem the consequences of our refusal to issue the writ in this case as likely to be serious, or to result in the ultimate defeat of the relator's rights. Delay alone will not deprive them of any permanent right. No serious complications are liable to follow if the question is not voted on at the coming election. No facts are urged or set forth to show the existence of an emergency, except delays caused by litigation and a possible appeal. We do not think that such facts show the existence of an extraordinary emergency. In State ex rel. Newell v. Purdy, 36 Wis. 213, 17 Am. St. Rep. 485, the court said: "The distinction between the election of public officers, to whom, for the time being, the exercise of the functions of sovereignty is intrusted, and the mere choice of a site for a public building, is quite apparent. The former involves, or may involve, the integrity of the government, and the preservation of the principles upon which it is founded, while the latter is only a matter of public convenience or pecuniary interest, involving no fundamental principle whatever." In State v. Juneau Co., 38 Wis. 554, the court said, in speaking of a similar question: "The right

—35—

sought to be enforced in this proceeding is of a permanent character, and cannot be destroyed or greatly impaired by delay. Indeed, it is not apparent that any considerable delay will necessarily result, should this court refuse to take jurisdiction."

For these reasons we are satisfied that no exceptional circumstances have been shown, and that the writ should not be issued.

Application denied. All concur.