MICHEL BLAIS *et al.* *vs.* J. B. S. BRAZEAU *et al.*

PROVIDENCE—OCTOBER 26, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1)  *Corporations.   Rights of Minority Stockholders.   Fraud.   Deeds.*

The majority of the stockholders of a corporation hold a relation to the minority which imposes upon them duties similar to those of trustees. They have no right to make any sale of the property of the corporation for their own benefit, or to accomplish purposes of peculiar interest to themselves.

A corporation voted to sell all of its property, and a committee was appointed for this purpose. The majority of the stockholders represented a policy opposed by the minority. Respondent stockholders formed a syndicate for the purchase of the property, which was sold to them by the committee for a sum less than its real value. The president, secretary, and treasurer thereupon executed a deed to the five members, one of whom was the treasurer:—

*Held*, that the deed would be set aside, as a fraud upon the rights of the minority stockholders, it appearing that the sale was made, not in the interest of the corporation, but to accomplish the purposes of the majority.

BILL IN EQUITY to set aside a deed.   Heard on bill, answer, and proof. Relief granted.

STINESS, C. J. This is a bill brought by complainant, for himself and other members of Le Union St. Jean Baptiste de Pawtucket, an incorporated beneficial society, to set aside a sale of its property to the respondents, and for a reconveyance.

The society was the owner of the land and building in which was its hall, subject to a mortgage of $3,000. It is claimed by the complainants that the property was worth much more than that sum. A proposition was made to have the society merged with a general organization, and upon this question the society was divided. The complainants were of the party opposing the merger, and the respondents not only favored it, but had become members of the general organization. A majority of the society, including the respondents, were in favor of the merger.

We cannot recite the voluminous testimony taken in this case; but it is enough to say that the majority, who had become members of the Society of America, were desirous of winding up the local society and transferring it and its property to the other. Enough was payable in dues to satisfy the current debts of the society, outside of the principal of the mortgage, which was not pressed, but, on motion of Brazeau, it was voted that no more dues be collected. The result of this vote was that only a few members paid their dues, and the majority was maintained by a large number, who were so far in default as to be ineligible as members under the rules. Still they were not stricken from the list, as the rules provide, but remained as members and voted. After this it was voted to sell all of the property of the society, and a committee was appointed for that purpose.

The respondents formed what they called a syndicate for the purchase of the property. The committee advertised the property for sale on sealed bids. No bids were received. The committee then voted to sell to the syndicate for $3,500. The president, secretary, and treasurer thereupon executed a deed in the name of the society, not by the committee, to five members, one of whom was the treasurer, which is the deed in question.

We think it is plain that the majority intended, by the vote to stop the collection of dues, to put the society into an insolvent condition and then to force a sale of its property.

As between themselves, perhaps, they had the right to vote to sell, if they acted in good faith. But, clearly, they had no right to make a sale for their own benefit, or to accomplish their own purposes, in respect to another organization of which they were, or proposed to be, members, to the injury of their fellow members. They held a relation to the minority which called for fair and equal dealing; which imposed upon them duties similar to those of trustees for others. The committee was bound to get as good a price as possible, if it should sell, and the members of it could not make a sale to themselves or to those who had a common interest with them. They made no attempt to sell at public auction, and offering the property on sealed bids, as the result proved, was not a form of sale likely to attract bidders. They sold, subject to the mortgage, although their bid was a sum large enough to pay it, for almost the exact sum of the current debts of the society, some of which were disputed, and which they knew were disputed. They paid these debts, outside of the mortgage note, themselves, thus avoiding questions which might be raised by creditors. The president and treasurer signing the deed were members of the committee to sell. The president testifies that the hall was worth, for a society, from $4,500 to $5,000, and the treasurer said that the total cost of land and buildings, about three years before, was $5,419. Yet this committee voted to sell for $3,500. Singularly enough, the treasurer entered in his book the receipt of $500, the only money paid, as a payment, not from the purchasers as individuals, but from "St. John Hall Syndicate." The name was aptly applied. In *Hambleton* v. *Rhind*, 84 Md. 456, the court said: "A syndicate is an association of individuals, formed for the purpose of conducting and carrying out some particular business transaction, ordinarily of a financial character, in which the members are mutually interested."

Such, evidently, were the purchasers of the property in this case. They were a part of and mutually interested with the

majority members whose design was to secure the property for the benefit of the organization to which they had transferred their allegiance. The committee was the agent of the whole society and was bound to protect the interests of the minority. The majority had put the society into the plight of an insolvent debtor, when otherwise its debts might have been paid, and had themselves voted the sale of the property to themselves, practically, for the end they desired to accomplish. In so doing they were not acting fairly toward the minority, who had rights as members in the property sold. See 1 Am. & Eng. Ency. Law (2nd ed.), 1075.

(1)    The doctrine applicable to this case is clearly stated in *Banks v. Judah,* 8 Conn. 145: "By the act of incorporation, a majority of the stockholders have the power to act for the whole. They become, therefore, agents or trustees for the whole. When they vote as a corporation to sell and as individuals to buy, they act precisely as when A., an executor, agrees to sell, and A., the individual, becomes the purchaser. Here a majority of the stockholders of the corporation, by their agent, Seymour Taylor, sell this property, and the same persons, by their agent, Lewis Raymond, purchase it. They are, in fact, both sellers and purchasers." It was further held that as the transaction was of a character which might be made use of for fraudulent purposes, it could not be tolerated, though there was no actual fraud.

To the same effect is *Wilson v. Proprietors,* 9 R. I. 590, where a majority of the stock was held by persons as trustees for the city of Providence, and they voted to sell to the city.

Brayton, C. J., said: "The control of this corporation in the disposition of this property, it is quite clear, was in the city, and it is quite as clear that the votes were given in accordance with its wishes and desire. Having this control, and exercising it, they stood in the place of the corporation, acting in the disposition of this property as trustees for sale." The deed was held to be void.

In *Mason v. Pewabic,* 133 U. S. 50, Mr. Justice Miller said: "There is no superior right in two or three men in the old company, who may hold a preponderance of the stock,

to acquire an absolute control of the whole of it, in the way which may be to their interest, or which they may think to be for the interest of the whole."

In *Chicago* v. *Yerkes*, 141 Ill. 320, it was held to be illegal and fraudulent for the majority of the stockholders to purchase the property of the company at a sale authorized by themselves. See also *Farmers Co.* v. *N. Y. R. Co.*, 150 N. Y. 410.

This principle applies equally to any corporation holding property, whether it has shares of stock or not.

This is enough to warrant setting aside the sale.

The complainants strongly rely on article 37 of the regulations, but it is not important. The article prohibits a dissolution of the society and a disposal of its funds, so long as fourteen members adhere to it. This does not mean that the society could not vote to sell any of its property to pay its debts, or for any other good reason, when fourteen members objected, if the sale was properly and fairly ordered and made. That, however, is not the question in this case. Enough appears to entitle the complainants to relief, which is all we need to say in this opinion, although many other matters have been presented, both in testimony and argument, which have little or no relevancy to the vital question under the bill.

The deed must be set aside as void.

*Hugh J. Carroll*, for complainants.

*Claude J. Farnsworth and Archambault & Gaulin*, for respondents.