El Pueblo, etc. Trigo et al., *v.* Banco Territorial y Agrícola de Puerto Rico.[1]

Nos. 4005–4007.—*Resueltos:* Febrero 23, 1927.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF

Aunque no sin dejar de tener algunas dudas, me inclino a convenir en que el caso de *Noble* de la Corte Suprema de los Estados Unidos, resuelve la cuestión de que el gobierno puede limitar las operaciones bancarias exclusivamente a las corporaciones organizadas de acuerdo con la ley. Más o menos, la teoría es que si un negocio ha llegado a tal estado que su debido dominio o reglamentación pueden solamente efectuarse mediante la superintendencia del gobierno, éste puede exigir que el negocio se lleve a cabo por corporaciones, sobre las cuales tiene completo dominio y que tienen existencia perpetua. El poder de policía ejercido quizás no difiere esencialmente de la supresión del tráfico del licor. De acuerdo con la Ley de Prohibición, solamente pueden

---

[1] Véase la opinión del Tribunal en la pág. 303.

venderse ciertos licores por determinadas personas; de acuerdo con la Ley de Bancos, únicamente se permite a las corporaciones efectuar el negocio de la banca. Debe haber, desde luego, alguna necesidad pública. Disiento de las otras conclusiones a que ha llegado la corte.

En mi opinión, una sociedad anónima como el Banco Territorial y Agrícola no es una corporación, según se usa esa palabra en el derecho americano e inglés; que participa más bien de las características de una *joint stock company.* La opinión de la mayoría, para demostrar que tal organización es una corporación, descansa grandemente en el caso de *Martínez* v. *La Asociación de Señoras Damas del Santo Asilo de Ponce,* 213 U. S. 20. En la Corte Suprema de los Estados Unidos, una de las partes alegó que la "Asociación" era una corporación española, y la corte, en su opinión, así lo asumió. El tribunal no entró a discutir la naturaleza de tal asociación y nada decidió sobre la naturaleza inherente de la misma. Desde luego que de acuerdo con el derecho civil las sociedades generalmente son consideradas como entidades, al igual que las corporaciones lo son en los Estados Unidos. La sociedad anónima no tiene sello, y si bien puede ser regulada hasta cierto punto por el Estado, era en forma más general una organización privada como lo son las sociedades y podía ser disuelta al igual que éstas. Las sociedades pueden ser reguladas por el Estado probablemente hasta ese mismo límite. Sea ello como fuere, incumbía al Banco Territorial y Agrícola probar que era una corporación comparable con las corporaciones autorizadas posteriormente por las leyes de Puerto Rico, o que era una corporación constituida por menos de los cinco incorporadores mencionados en la ley. Desde luego, si el Banco no era una corporación, no estaba reconocido por la Ley de Bancos y es claro que estaba obligado a incorporarse al igual que otros individuos.

Asumiendo, sin embargo, que el Banco Territorial y Agrícola sea una corporación, o cierta clase de corporación, no

obstante, el mismo no era la corporación autorizada por las leyes de Puerto Rico. Aun asumiendo que el banco fuera una verdadera corporación, no puedo convenir en que tuviera el derecho de transferir su activo en la forma en que trató de hacerlo.

La sección 4 de la Ley de la Sesión Extraordinaria de 1923, página 85, dispone como sigue:

"Cinco o más personas con capacidad legal suficiente, podrán organizar un banco, otorgando ante notario y archivando, en duplicado, cláusulas de incorporación de acuerdo con las disposiciones de esta sección, *Disponiéndose,* no obstante, que los bancos que actualmente estuvieren haciendo negocios en Puerto Rico podrán continuar tales negocios en Puerto Rico, aun cuando hayan sido organizados como corporaciones con menos de cinco incorporadores, siempre que se sujeten a las demás disposiciones de esta Ley; *Disponiéndose,* además, que los bancos que estuvieren haciendo negocios en Puerto Rico, y que no hayan sido incorporados, deberán incorporarse de acuerdo con las disposiciones de esta Ley, dentro de un plazo de seis meses contados desde la fecha en que la ley empiece a regir.

"Dichas cláusulas de incorporación deberán firmarse por cada uno de los incorporadores y jurarse en debida forma ante un notario público. Se hará constar en ellas específicamente:

"(a) Nombre que haya de llevar el banco;

*          *          *          *          *          *          *          "

Me inclino a estar enteramente de acuerdo con la corte inferior en que el Banco Territorial y Agrícola de Puerto Rico, si bien tenía el derecho a incorporarse, reincorporarse o reorganizarse, no tenía el derecho de hacerlo así apartándose de la ley y sin prestar atención a los derechos de la minoría de sus socios o accionistas. Soy de opinión que el banco no podía incorporarse, reincorporarse, o reorganizarse sin que antes liquidara sus cuentas (*settle*) con los socios de la minoría que se oponían al cambio; y que si con el fin de efectuar tal liquidación era necesaria la disolución, el banco debió haberse disuelto. No había autoridad legal para tratar de hacer lo contrario. Si fué la intención

de tal ley conceder ese derecho, la misma era anticonstitucional, porque privaba a las personas de sus derechos sin el debido procedimiento de ley.

"Cook on Corporations," párrafo 670, página 1992, *et sec.*, dice así:

"Desde que fué resuelto el caso de Abbot v. American Hard Rubber Company, ha quedado claramente establecida la ley en este país de que un accionista que disiente de la mayoría puede impedir que se efectúe la venta de toda la propiedad de la corporación, cuando ésta es una organización solvente y está en condiciones de continuar funcionando.   Y, aun cuando el fin que se persigue es la disolución de la corporación, a pesar de que sus negocios son prósperos, no puede efectuarse tal venta.   Es en verdad muy dudoso de si de acuerdo con el derecho común una mayoría de los accionistas puede en ocasión alguna efectuar la disolución de la misma, cuando la corporación continúa funcionando y es una organización próspera. En verdad, si el fin de tal disolución no es la terminación *bona fide* del negocio, sino la continuación del mismo por una nueva corporación, entonces la regla es que un accionista que disiente puede impedir la venta, aun si ésta se efectúa con el fin de disolver la corporación.   Tal es la ley según ha sido establecida en el bien consi-derado caso de Kean v. Johnson."   (9. N.J. Eq. 401).

En el caso de *Emery v. Kalamazoo & Hastings Construction Co.,* 132 Mich. 560, se resolvió que la mayoría de los accionistas de una *sociedad en comandita* (*limited partnership*) no tenía autoridad para poner fin a los asuntos de ésta permutando su propiedad por acciones de otra corporación y obligando a un socio disidente a convertirse en un miembro de la corporación y a aceptar acciones en pago de su interés en la sociedad.

Refiriéndose a las sociedades, en el caso de *Mason* v. *Pewabic Mining Co.,* 133 U. S. 50, se resolvió que el derecho de las minorías debe ser respetado.   El caso de *Schwab* v. *E. G. Potter Co.,* 194 N.Y. 409, que fué resuelto en el mismo sentido, decidió que una entidad no podía crear otra. Otros casos excelentes son: *Farish* v. *Cieneguita Copper Co.* (Arizona), 100 Pac. 781, y *Blais et al.* v. *Brazeau,* 56 Atl. 186. Si una entidad no puede legalmente hacer estas cosas, tam-

poco puede hacerlas la Legislatura, y el tratar de hacerlo, en mi opinión no constituye el debido proceso de ley.   Véase 7 R.C.L., página 97.

Si uno de los fines de la ley fué la continuación de la corporación existente y de la misma personalidad, el título de la ley dejó de llamar la atención hacia este factor de la misma, y, por consiguiente, la ley no siguió las disposiciones del artículo 34 de la Carta Orgánica.   Sin embargo, como yo sostengo que la sección 4, debidamente considerada, no dispone tal cosa, soy de opinión que el título de la ley abarca todos los fines de la misma.

Llego a la conclusión de que la sección 4 solamente se refiere a la continuación de corporaciones que ya estaban organizadas como tales, que el Banco no era tal corporación, pero que si lo era, no tenía derecho a reorganizarse sin el consentimiento de la minoría de los accionistas; y que lo que se trató de hacer fué una reorganización y no una reincorporación.

De acuerdo con la Ley de Bancos, se concede una personalidad o entidad distintas.   El Banco, mediante resolución o acuerdo, no podía convertirse a sí mismo en tal personalidad o entidad, como tampoco podría una persona por sí misma convertirse en otra.   Era necesaria la disolución y la reorganización.